PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 12-4523

———————

UNITED STATES OF AMERICA

v.

CRAIG A. GRIMES,

Appellant

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 12-cr-00019)
District Judge: Honorable Yvette Kane

———————

Argued November 13, 2013
Before: HARDIMAN, SHWARTZ,
and SCIRICA *Circuit Judges*.

(Filed: January 7, 2014)

Stephen R. Cerutti, II [Argued]
Joseph J. Terz

Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108
    *Attorneys for Plaintiff-Appellee*

Peter Goldberger [Argued]
50 Rittenhouse Place
Ardmore, PA 19003
    *Attorneys for Defendant-Appellant*

———————

OPINION

———————

HARDIMAN, *Circuit Judge*.

In *United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001), we upheld the validity of a defendant's waiver of appellate rights following his guilty plea. This appeal presents the novel question of whether a waiver of certain post-conviction rights nullifies an appellate waiver. We hold that it does not.

I

In January 2012, Craig A. Grimes, a former professor of materials science and engineering at Pennsylvania State University and the sole owner of three research companies, agreed to plead guilty to a three-count information charging him with: wire fraud, in violation of 18 U.S.C. § 1343; false statements, in violation of 18 U.S.C. § 1001; and money laundering, in violation of 18 U.S.C. § 1957. The charges

2

stemmed from Grimes's fraudulent conduct involving federal science grants. In brief, Grimes secured grants for which he was ineligible, stated that he would use one grant to conduct research that never actually occurred, and used grant money for personal and non-grant-related purposes.

Grimes and his attorney signed a plea agreement in which the Government indicated that his advisory sentencing range under the United States Sentencing Guidelines would be 41 to 51 months in prison. The plea agreement also contained the following waiver of Grimes's direct and collateral appeal rights:

> [T]he defendant knowingly and voluntarily waives the right to appeal any conviction and sentence imposed by the Court . . . provided that the sentence is below or within the guideline range determined by the Court. The Defendant also knowingly and voluntarily waives the Defendant's right to challenge his guilty plea, conviction or sentence, or the manner in which the sentence was determined in any collateral proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255.

Above Grimes's signature on the last page of the agreement was an acknowledgement stating that he had read the agreement, carefully reviewed it with his attorney, understood it, and voluntarily agreed to it. Above his attorney's signature was an acknowledgement that she too had carefully reviewed every part of the agreement with her client and that, to her knowledge, Grimes's decision to enter into it was informed and voluntary.

In February 2012, Grimes pleaded guilty before United States Magistrate Judge Martin Carlson.[1] During his plea colloquy, Grimes confirmed under oath that he was 56 years old, had a Ph.D., and was satisfied with the representation his counsel had provided. He stated that he understood the charges against him, as well as his rights and his potential defenses. He waived his right to an indictment and to a jury trial. Grimes also represented that he had voluntarily signed the plea agreement and had enough time to review it with his attorney before signing it. Finally, Grimes stated that no one had pressured him to sign the agreement, said he was signing it of his own free will, and acknowledged that no one could guarantee how the District Court would sentence him. The Magistrate Judge summarized the charges, potential penalties, and sentencing guidelines, ensuring that Grimes understood them.

The Magistrate Judge then specifically discussed the appellate waiver with Grimes:

> THE COURT: Now, ordinarily you would have the right to later bring proceedings such as a direct appeal or a collateral challenge to challenge your conviction and sentence. Do you understand that this plea agreement has provisions in it which limit[] your ability to take an appeal?
>
> GRIMES: Yes, Your Honor.

---

[1] Grimes consented to proceed before a magistrate judge for the purpose of entering a guilty plea, pursuant to 28 U.S.C. § 636(b).

THE COURT: And I'm directing your attention to paragraph 24 on page 16 of the written plea agreement.

GRIMES: Yes, Your Honor.

THE COURT: Did you review that paragraph specially with counsel?

GRIMES: Yes, sir, I did.

THE COURT: And did you voluntarily agree to waive those appellate rights?

GRIMES: Uh-huh, yes, sir.

THE COURT: And what I note is that paragraph provides that you would waive appellate rights with the exception of any sentence that might exceed the guideline imprisonment range, and that you would also waive any right to collaterally challenge any sentence in a proceeding brought under Title 28 of the U.S. Code, Section 2255, with the exception of a sentence that might exceed the guideline imprisonment range. That is my understanding of the waiver in this case. Is that correct, [Assistant U.S. Attorney]?

ASSISTANT U.S. ATTORNEY: That is correct, Your Honor.

THE COURT: And is that your understanding of the waiver, Mr. Grimes?

GRIMES: Yes, sir.

THE COURT: And did you voluntarily waive that right after discussing with your attorney your right to appeal and the nature of what you were giving up in that paragraph?

GRIMES: Uh-huh, yes, sir, I did.

The Magistrate Judge accepted Grimes's plea, finding it knowing and voluntary, and issued a report recommending that the District Court do the same. In March, Chief District Judge Yvette Kane adopted the report and accepted the guilty plea.

In November 2012, the District Court sentenced Grimes to 41 months' imprisonment, at the bottom of the Guidelines range of 41 to 51 months. After announcing the sentence, the District Court reminded Grimes that although he had a right to appeal, he had limited that right under the waiver in the plea agreement. "These waivers are usually enforceable, but if you believe that the waiver you executed in this case is unenforceable, you are entitled to present that theory to the appellate court," the District Court said. This timely appeal followed.[2]

## II

Grimes argues that we should find his appellate waiver invalid and address the merits of his appeal. He contends that

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

his appellate waiver was not knowing and voluntary because it contained a waiver of his right to collaterally challenge his guilty plea, conviction, or sentence that did not exempt Sixth Amendment ineffective assistance of counsel claims. According to Grimes, he could not have knowingly and voluntarily agreed to waive his appellate rights because his trial counsel faced an inherent, actual conflict of interest in negotiating and advising him on the waiver. Grimes insists that this conflict pitted his own interest as a criminal defendant against his attorney's reputational and professional interest in avoiding future ineffective assistance of counsel claims. Grimes also argues that even if we find his appellate waiver to be knowing and voluntary, we should still refuse to enforce it to avoid a miscarriage of justice. The Government urges us to enforce the waiver and dismiss this appeal.

A criminal defendant may knowingly and voluntarily waive many fundamental constitutional rights, including the right to a jury trial, the right to confront and cross-examine witnesses, and the right against self-incrimination. *Khattak*, 273 F.3d at 561 (citing *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995)). The ability to waive statutorily created rights, such as the right to appeal a criminal conviction, logically flows from a defendant's ability to waive constitutional rights. *Id.* Thus, "[w]e will enforce an appellate waiver and decline to review the merits of an appeal where we conclude (1) that the issues [the defendant] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice." *United States v. Wilson*, 707 F.3d 412, 414 (3d Cir. 2013) (internal quotation marks omitted).

7

We review the validity and scope of an appellate waiver de novo. *Id.*

Here, there is no dispute regarding the scope of Grimes's appellate waiver following the imposition of his within-Guidelines sentence. Thus, we turn to whether Grimes knowingly and voluntarily waived his right to appeal and whether enforcing the waiver would be a miscarriage of justice.

A

Grimes claims that his waiver was not knowing and voluntary because his attorney's alleged conflict of interest left him without "the effective assistance of counsel to which he was entitled in connection with the negotiation and entry of a guilty plea." Grimes Br. at 22. Grimes does not seek to withdraw his plea, but challenges only the waiver.

We have not directly addressed whether ineffective assistance of counsel in the negotiation of an appellate waiver renders that waiver invalid, although we have suggested that it could. *See United States v. Mabry*, 536 F.3d 231, 243 (3d Cir. 2008) (noting the absence of allegations that counsel was ineffective "in negotiating the very plea agreement that contained the waiver"); *United States v. Shedrick*, 493 F.3d 292, 298 & n.6 (3d Cir. 2007) (noting that "[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [defendant] from understanding his plea . . . would result in a miscarriage of justice").

Grimes claims he was "adversely affected by his attorney's actual conflict of interest in that counsel had to advise the client whether to waive all claims on collateral

8

attack, including the client's right to challenge the attorney's own ineffective assistance, where it might well be in [his] interests to preserve the opportunity to advance such a challenge." Grimes Br. at 27. He attempts to bootstrap that challenge to his waiver of collateral rights onto his appellate waiver with the declaration that the two waivers are "intertwined." We are unpersuaded.

In our view, waivers of appellate rights and collateral attack rights are analytically distinct. Even accepting for the sake of argument Grimes's contention that it is an impermissible conflict of interest for a lawyer to negotiate "a guilty plea that purports to waive all claims affecting the conviction or sentence, not excluding ineffective assistance of counsel, including those claims which might involve that same lawyer's performance," Grimes Br. at 25–26, a conflict exists only insofar as the waiver prevents us from hearing claims we would otherwise hear. As we have noted, ineffective assistance claims are rarely cognizable on direct appeal. *United States v. Morena*, 547 F.3d 191, 198 (3d Cir. 2008). Thus, unless the record in Grimes's case shows "an actual conflict of interest [that is] clear on the record," *id*. (citing *Gov't of the Virgin Islands v. Zepp*, 748 F.2d 125, 133–34 (3d Cir. 1984)), we would not entertain his ineffective assistance claim at this stage, waiver or not.

This appeal is unlike the situation we confronted in *Zepp*, where we reached the merits of an ineffective assistance of counsel claim based on conflict of interest on direct appeal. There, the ineffective assistance claim was cognizable on direct appeal because defense counsel's actions in the proceedings below "put the trial court on notice with respect to the issue of conflict of interest" and provided sufficient information for review. *Zepp*, 748 F.2d at 134 &

9

n.9. By contrast, the record in Grimes's appeal is devoid of any allegation of conflict of interest. Grimes faults the Magistrate Judge who conducted his plea colloquy for not inquiring, *sua sponte*, into a potential conflict of interest, but he cites no precedent to support that imperative in this factual context. Grimes also asserts conclusorily that the alleged conflict adversely affected him, but does not specify what he would have done differently had he been aware of the purported conflict. He seeks only to negate the waiver, not withdraw his plea, but it is unclear whether the plea would have been available or how it would have otherwise looked had the waiver either been excised or reworded in light of Grimes's concerns.

Instead, Grimes asks us to find appellate waivers invalid per se if they do not "carve out claims of ineffective assistance concerning the same attorney who counseled the plea." Grimes Br. at 28. We undoubtedly will have occasion to address that issue in another case, but we decline to do so on these facts.[3] We hold merely that Grimes's waiver of his right to appeal was knowing and voluntary and that the plea

---

[3] In so doing, we acknowledge the ethical concerns noted by the National Association of Criminal Defense Lawyers and at least eight states' legal ethics arbiters. *See* National Association of Criminal Defense Lawyers Formal Opinion 12-02 (Oct. 2012) ("[I]t is NACDL's position that defense counsel has an ethical and constitutional duty to object to and refuse to sign any plea agreement provision that amounts to a waiver of post-conviction remedies. This protects the rights of the client to later challenge the representation of the lawyer.").

agreement's inclusion of a waiver of his collateral attack rights did nothing to vitiate his valid appellate waiver.

## III

Grimes argues in the alternative that even if his appellate waiver is valid, it should not be enforced because to do so would constitute a miscarriage of justice. To determine whether enforcing a waiver works a miscarriage of justice, we consider

> [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Khattak*, 273 F.3d at 563 (quoting *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001)). To qualify as a miscarriage of justice, "[i]t is not enough that an issue [is] meritorious"; after all, appellate waivers are intended to preclude review not just of frivolous questions, but of difficult and debatable legal issues we would otherwise consider. *United States v. Castro*, 704 F.3d 125, 136 n.6 (3d Cir. 2013). Rather, the miscarriage of justice exception to appellate waivers applies only in "unusual circumstance[s] . . . with the aim of avoiding manifest injustice." *Id.* at 136 (internal quotations and citation marks omitted). In *Castro*, for instance, we reached the merits and overturned a conviction despite an appellate waiver because the record showed "a complete failure of proof on an essential element of the charged crime." *Id.* at 139. Allowing a conviction to

11

stand under those circumstances would have seriously impugned "the fairness, integrity, and public reputation of our courts" and constituted a true miscarriage of justice. *Id.*

Here, Grimes contends his sentence was unreasonable compared to the punishment others received for similar or worse conduct. Specifically, he describes the District Court's alleged "failure . . . to give adequate consideration to the need to avoid unwarranted disparities with defendants in other cases across different districts" as "a failure to satisfy one of the most fundamental of the [18 U.S.C.] § 3553(a) factors in terms of its role in the non-mandatory guidelines world." Grimes Br. at 35–36. Grimes argues that he would have received a lesser sentence if the District Court had more thoroughly considered his disparity argument.

Although "there may well be unusual situations in which an unreasonable sentence, standing alone, could require invalidating [a] waiver to avoid a miscarriage of justice," such situations are rare, especially in light of our deferential abuse-of-discretion standard for reviewing sentencing appeals. *United States v. Jackson*, 523 F.3d 234, 244 (3d Cir. 2008) (finding no miscarriage-of-justice waiver exception to defendant's challenge to the reasonableness of her sentence). This case is not one of those unusual situations, in large part because it does "not implicate fundamental rights or constitutional principles." *Mabry*, 536 F.3d at 243. Indeed, Grimes's challenge to his bottom-of-the-Guidelines sentence is precisely the type of appeal his appellate waiver was intended to foreclose. Accordingly, we hold that Grimes's miscarriage of justice argument falls well short.

12

## IV

In sum, we hold that Craig Grimes knowingly and voluntarily waived his right to appeal his sentence. His valid appellate waiver is unaffected by the waiver of his right to collaterally attack his sentence, and to enforce his appellate waiver would not work a miscarriage of justice. Accordingly, we will dismiss Grimes's appeal.