Filed 3/13/15  P. v. Gonzalez CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        **Plaintiff and Respondent,**<br><br>v.<br><br>**PETER GONZALEZ,**<br><br>        **Defendant and Appellant.** | **A136259**<br><br>(San Francisco County<br>Super. Ct. No. 2407508) |

Peter Gonzalez challenges the trial court's decision to deny his request for substitute counsel after he entered a plea of guilty pursuant to a negotiated disposition. He argues his counsel had a conflict of interest, a conflict that necessitated appointment of new counsel who could explore the possibility of withdrawing his plea.  Gonzalez further contends the trial court erred in making a restitution order with respect to one of the victims of an offense with which Gonzalez was charged.

We conclude the trial court did not err and accordingly affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The facts of the underlying offenses are irrelevant to the issues raised on appeal, and we therefore set forth only the procedural history of the case.  Additional facts relevant to the issues on appeal are included in the discussion section of this opinion.

The San Francisco County District Attorney filed an information charging appellant and Patricio Garcia jointly with:  attempted murder (Pen. Code, §§ 664/187;

1

count I),[1] street terrorism (§ 186.22, subd. (b)(1)(B); count II), assault with a firearm (§ 245, subd. (a)(2); counts III, IV, V, and VI), and participation in a criminal street gang (§ 186.22, subd. (a); count VII). The district attorney also charged Gonzalez individually with conspiring to commit an act injurious to the public (§ 182, subd. (a)(5); count VIII), being an accessory after the fact (§ 32; count IX), and participating in a criminal street gang (§ 186.22, subd. (a)). The district attorney also alleged a firearm enhancement (§ 12022.53, subds. (d) & (e)(1)) with respect to count I, serious or violent felony street gang enhancements (§ 186.22, subds. (b)(1)(C) & (b)(1)(B)) with respect to counts I through VI, and a nonviolent street gang enhancement (§ 186.22, subd. (b)(1)(A)) as to accessory count IX.

On May 24, 2010 appellant pleaded guilty to count IX and the district attorney dismissed the other counts. The plea was subject to a cooperation agreement requiring Gonzalez to testify truthfully and completely at the preliminary examination in a homicide prosecution involving defendant Steve Lane, San Francisco Superior Court No. 2425855. But when Gonzalez was called as a witness in the Lane matter on August 16, 2010, he asserted his Fifth Amendment right against self-incrimination. On that same day, Judge Jerome T. Benson granted the People's motion to set aside the plea on the basis that Gonzalez had failed to comply with the cooperation agreement; the court reinstated all charges and reentered not guilty pleas.

Judge Charles T. Haines, who was presiding over Gonzalez's criminal case, later made a preliminary finding that Gonzalez had breached the cooperation agreement based on the record that was before Judge Benson. Judge Haines nevertheless granted Gonzalez's request for a further hearing on whether he had breached the cooperation agreement. The parties briefed the issue, and after a hearing, Judge Haines found Gonzalez in breach and ordered the agreement set aside.

After his case was assigned for trial to Judge Benson, Gonzalez sought to disqualify the judge for cause. (See Code Civ. Proc., § 170.1, subd. (a)(1), (a)(6)(A)(ii),

---

[1] All further undesignated statutory references are to the Penal Code.

(a)(6)(A)(iii).)  On October 28, 2010, Judge Benson struck the challenge against him for failure to state legal grounds for disqualification and filed a verified answer to the challenge.  After Judge Benson struck the challenge for cause, Gonzalez sought to exercise a peremptory challenge pursuant to Code of Civil Procedure section 170.6, but the court ruled the peremptory challenge untimely.  Gonzalez then filed a petition for writ of mandate in this court seeking review of the denial of his challenges to Judge Benson.[2] (Code Civ. Proc., § 170.3, subd. (d).)

On October 29, 2010, the district attorney filed an amended information.

On November 2, 2010, during the jury selection process, Gonzalez moved for a substitution of appointed counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).  The court denied the motion.

On November 5, 2010, pursuant to a negotiated disposition, Gonzalez pleaded guilty to the charge of assault with a firearm in count II of the amended information and to an enhancement under section 186.22, subdivision (b).  Gonzalez also entered a general waiver of his appellate rights in addition to a specific appellate waiver relating to the gang allegation.  Sentencing was set for December 8, 2010.

Gonzalez sought to delay sentencing until after we issued a decision on his writ of mandate.  On December 6, 2010, the trial court denied his request for a continuance of sentencing.  The following day, this division denied Gonzalez's petition for a writ of mandate, concluding the appellate waiver Gonzalez had entered as part of his November 5, 2010 plea agreement encompassed the writ issues.[3]

---

[2] Gonzalez filed his petition for writ of mandate in this court on November 1, 2010, and it was assigned case No. 130172.  We take judicial notice of our record in the related writ proceeding.  (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a); *People v. Davis* (2014) 226 Cal.App.4th 1353, 1359.)

[3] Our unpublished order stated:  "The petition for writ of mandate is denied.  Having reviewed the entire record provided and the applicable law, the court concludes that petitioner's general appellate waiver as part of his plea agreement encompassed the instant writ petition.  (*People v. Panizzon* (1996) 13 Cal.4th 68, 80; *In re Uriah R.* (1999) 70 Cal.App.4th 1152, 1157; *People v. Nguyen* (1993) 13 Cal.App.4th 114, 120; *People v. Vargas* (1993) 13 Cal.App.4th 1653, 1662.)"

On December 8, 2010, Gonzalez moved for the appointment of conflicts counsel in order to pursue a motion to withdraw his plea.  As a result of the request, the court conducted another *Marsden* hearing after which it denied the motion.  The court then sentenced Gonzalez to a term of three years for the assault with a firearm and to a consecutive four-year term for the gang enhancement.  It also ordered Gonzalez to pay $9,645 in restitution to Kelvin Amos.

On January 31, 2011, Gonzalez filed a notice of appeal.  Gonzalez requested a certificate of probable cause on the ground that his "[p]lea was not a product of a knowing or voluntary waiver."  The trial court granted the request.

DISCUSSION

Gonzalez argues he was entitled to substitute counsel before bringing a motion to withdraw his plea.  Under this argument heading, he groups a number of disparate contentions.  Although his opening brief is not a model of clarity, Gonzalez's principal claim is that the trial court misapplied the holding of *People v. Smith* (1993) 6 Cal.4th 684 (*Smith*) in denying his second *Marsden* motion.  He contends the trial court erred in denying that motion because trial counsel allegedly had a conflict of interest that impaired his ability to file a motion to withdraw the plea.  Gonzalez also argues the restitution order to Kelvin Amos must be set aside.

We first examine the parties' arguments regarding which issues are properly before us in light of Gonzalez's waiver of appellate rights and his certificate of probable cause.  We will then turn to the merits of the case.

I.       *The Scope of the Appellate Waiver and the Certificate of Probable Cause*

The parties devote considerable time to discussing whether Gonzalez's arguments on appeal are barred by his waiver of appellate rights.  Gonzalez seems to contend all the arguments he raises are cognizable because he was issued a certificate of probable cause.  The Attorney General argues the waiver bars appellate review of Gonzalez's *Marsden* claims.  We find neither party's argument persuasive.

Gonzalez's November 5, 2010 plea agreement included a waiver of his appellate rights.  "A broad or general waiver of appeal rights ordinarily includes error occurring

4

before *but not after* the waiver[.]" (*People v. Mumm* (2002) 98 Cal.App.4th 812, 815 (*Mumm*), italics added.) Thus, Gonzalez's waiver of his appellate rights would not ordinarily encompass any unforeseeable future error. (See *People v. Vargas* (1993) 13 Cal.App.4th 1653, 1662 (*Vargas*) [general waiver of appellate rights does not include future sentencing error].) The Attorney General does not tell us why the waiver, executed on November 5, 2010, should apply to bar in their entirety claims of error arising out of the second *Marsden* hearing, which was held approximately one month later on December 8, 2010. (Cf. *People v. Panizzon* (1996) 13 Cal.4th 68, 85-86 (*Panizzon*) [general waiver of appellate rights bars claim of sentencing error where plea agreement specifies sentence and includes waiver of right to appeal sentence].) We therefore disagree that Gonzalez has waived the right to appeal the denial of his second *Marsden* motion, although as we explain below, we conclude the waiver does encompass certain arguments Gonzalez includes in his opening brief.

For his part, Gonzalez argues that obtaining a certificate of probable cause pursuant to section 1237.5 entitles him to bring up claims that would otherwise be barred by his waiver of appellate rights. It does not. Section 1237.5 describes the procedures involved in perfecting an appeal from a judgment based on a guilty plea; it does not affect the *grounds* on which an appeal may be taken. (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1178 (*Hoffard*).) "Section 1237.5 does not restrict the scope of inquiry into a cognizable error once a certificate has been issued. [Citation.] By the same token, filing a certificate cannot expand the scope of review to include a noncognizable issue." (*Ibid.*) Gonzalez's certificate of probable cause allowed him to *take* an appeal. (§ 1237.5 ["[n]o appeal shall be taken" following a guilty plea absent trial court execution of a certificate of probable cause].) That does not, however, expand the issues *subject to review* on appeal. (*Hoffard, supra,* at p. 1178.) Gonzalez's certificate of probable cause therefore has no impact on the validity or effect of the waiver of appellate rights included in the November 5, 2010 plea agreement. Thus, the waiver precludes a direct appellate attack on alleged errors occurring before entry of that plea. (*Mumm, supra,* 98 Cal.App.4th at p. 815; *Vargas, supra,* 13 Cal.App.4th at pp. 1658-1660.) And as for Gonzalez's claims of

*Marsden* error, the certificate of probable cause is unnecessary. (*People v. Vera* (2004) 122 Cal.App.4th 970, 978 (*Vera*) [no certificate of probable cause required to challenge trial court's denial of post-plea *Marsden* motion].)

II.    *The Trial Court Did Not Abuse its Discretion in Denying Gonzalez's Second Marsden Motion.*

Gonzalez asserts the trial court erred in denying his second *Marsden* motion because he was entitled to new counsel due to trial counsel's conflict of interest. "On appeal we review the denial for an abuse of discretion." (*Vera, supra,* 122 Cal.App.4th at p. 979.) We summarize the facts before analyzing Gonzalez's claims of error.

A.    *Factual Background*

The trial court held the *Marsden* hearing after defense counsel informed the court Gonzalez wanted the opportunity to withdraw his plea and requested that counsel be appointed "to look at the . . . ineffective assistance of counsel issue and other matters to go to his knowing whether the waiver of rights and change of plea was knowing, intelligent and voluntary under the circumstances." At the outset of the hearing, when asked why he wanted new counsel, Gonzalez stated he felt he had been "misinformed [about] what's going on right now and about the whole deal and the writ." He told the trial court he felt "misinformed by everything" and that his counsel's "incompetence . . . had to do with [his] decision that led to [his plea] deal[.]" When the court asked how trial counsel had incompetently led Gonzalez to accept the plea agreement, Gonzalez stated he had not known counsel "included speedy trial violations, that he included the whole thing about the writ." Gonzalez also referred to the judicial disqualification motion.

Gonzalez's trial counsel addressed the court, and he elaborated on the issues of the waiver of appellate rights, speedy trial matters, and his unsuccessful challenges to Judge Benson.[4] The court then asked Gonzalez if he had anything to add, and defendant

---

[4] Counsel's unsuccessful challenge to Judge Benson had been the basis of Gonzalez's first *Marsden* motion. Insofar as Gonzalez can be understood to challenge the denial of that motion, he fails to explain how he might have been prejudiced by the denial of the challenge to Judge Benson. (See *People v. Lee* (2002) 95 Cal.App.4th 772, 780 [defendant failed to show attorney's failure to file timely Code Civ. Proc., § 170.6 motion

6

replied, "I basically feel like something else could have been done instead of being here where I'm at now. [¶] I feel like other things could have been done that weren't done, and I feel that . . . my trust was kind of betrayed because I was misinformed[.]" Trial counsel added his belief that "but for the assignment to this department for trial and the failure of the Court of Appeal to address the issue in a timely manner," Gonzalez would have changed his plea and not accepted the negotiated disposition.

The trial court found that the record of the proceedings did not show trial counsel was providing inadequate representation. It further found the record did not show "any conflict or any irreconcilable conflict such that ineffective representation occurred or is likely to result." It therefore denied the motion.

B.     *Gonzalez Has Forfeited the Claim of Conflicted Representation.*

Gonzalez contends the trial court erred in denying his second *Marsden* motion because his trial counsel labored under a conflict of interest and thus could not be counted on to represent his client's best interests at the hearing. As the Attorney General correctly points out, however, this ground was not among those Gonzalez raised at the *Marsden* hearing. Because Gonzalez did not present this argument to the trial court, he has forfeited it for appeal. (See *People v. Jones* (2012) 210 Cal.App.4th 355, 362 [defendant forfeited *Marsden* issue by failing to bring it to trial court's attention].)

Gonzalez's reference to the trial court's comment that "the record does not show that there is any conflict" does not persuade us the issue was raised below. Viewed in context, it is clear the court was simply referring to the situations in which a *Marsden* motion will be granted, i.e., "if the record shows that the first appointed attorney is not providing adequate representation or that the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to

resulted in prejudice].) Although Gonzalez raised the challenge issue again at the second *Marsden* hearing, the trial court was not required to entertain a second motion as to this repeated ground. (*People v. Clark* (1992) 3 Cal.4th 41, 104 ["the trial court was not required to afford a hearing each time defendant made the same accusations"]; *Vera, supra,* 122 Cal.App.4th at p. 980 ["a defendant is not entitled to keep repeating and renewing complaints that the court has already heard"].)

result[.]" (*Smith, supra,* 6 Cal.4th at p. 696.)  This is particularly evident here, since before making its ruling, the trial court stated on the record that it had just read the very page of the *Smith* opinion on which the above-quoted language appears.

      C.     *Gonzalez's Argument Is Based on Faulty Assumptions, and He Fails to Articulate the Nature of the Alleged Conflict.*

Even if the argument were properly before us, it would be meritless.  Although it is not entirely clear, Gonzalez seems to argue the alleged conflict of interest arose in part because his counsel entered into a plea agreement that waived any claim of ineffective assistance of counsel (IAC).  In our view, "[Gonzalez] confuses the issue.  The waiver involved in this case is an express waiver of a statutory right of appeal, not an implicit waiver of the constitutional right to effective counsel." (*Vargas, supra,* 13 Cal.App.4th at p. 1659.)  Gonzalez points to nothing in the record suggesting his plea agreement waived IAC claims, and the plea agreement counsel read into the record on November 5, 2010, contains no mention of such claims.  (Cf. *U.S. v. Castro* (3d Cir. 2013) 704 F.3d 125, 136 [plea agreement specifically provided that defendant " 'voluntarily and expressly waives all rights to appeal *or collaterally attack* [his] conviction, sentence, or any other matter relating to this prosecution' "], italics added; *Washington v. Lampert* (9th Cir. 2005) 422 F.3d 864, 866 [defendant's waiver "include[d] all existing or future claims, known or unknown, and all types of judicial or other review, including but not limited to *all claims for post-conviction relief or federal habeas corpus relief*"], italics added.)

In short, Gonzalez simply does not explain why a waiver of appellate rights would include a waiver of claims of ineffective assistance of counsel.[5]  (See *U.S. v. Grimes* (3d Cir. 2014) 739 F.3d 125, 129 [waiver of appellate rights and waiver of right to collateral

---

[5] The authorities Gonzalez cites on this point all concern conflicts of interest arising from defense counsel who are faced with proposed plea agreements that waive IAC claims. (See, e.g., National Association of Criminal Defense Lawyers Formal Opinion 12-02 (Oct. 2012) ["[I]t is NACDL's position that defense counsel has an ethical and constitutional duty to object to and refuse to sign any plea agreement provision *that amounts to a waiver of post-conviction remedies*.  This protects the rights of the client to later challenge the representation of the lawyer." (Italics added.)], quoted in *U.S. v. Grimes, supra,* 739 F.3d at p. 130, fn. 3.)

8

attack are analytically distinct].) And at least one California Court of Appeal has held that an IAC claim in connection with the making of an appellate waiver "cannot be barred by the agreement that is the product of the alleged ineffectiveness." (*People v. Orozco* (2010) 180 Cal.App.4th 1279, 1285.) We therefore see no basis for Gonzalez's assumption that his plea agreement entailed a waiver of IAC claims.

In addition, Gonzalez's claims of error are predicated to a significant extent on his view that Judge Haines erred in finding him in breach of the cooperation agreement. He contends the cooperation agreement—a part of his *first* plea agreement—did not confer the immunity it purported to confer.[6] From that premise, he then argues that his trial counsel, who negotiated the cooperation agreement, had a conflict of interest that would have prevented him from adequately representing Gonzalez on a motion to withdraw the *second* plea. But Gonzalez does not explain why this is so, and we therefore conclude he has forfeited the argument. (See *People v. Ashmus* (1991) 54 Cal.3d 932, 985, fn. 15 [claim that "is perfunctorily asserted without argument in support" is not properly raised].)

Beyond his failure to articulate the nature of the alleged conflict of interest, Gonzalez also has not explained why his argument about Judge Haines's finding of breach—a finding made *before* he entered into his second plea agreement—is not barred by his waiver of appellate rights. (See *Mumm, supra,* 98 Cal.App.4th at p. 815 [general waiver of appeal rights ordinarily includes error occurring before the waiver].) Moreover, even if this issue were *not* encompassed by the waiver, Gonzalez has not

---

[6] According to Gonzalez, he properly invoked his Fifth Amendment rights because the immunity provided by the cooperation agreement was not broad enough to cover the matters on which Lane's counsel sought to examine him at the Lane preliminary examination. He therefore maintains he did not breach the agreement. The trial court concluded otherwise, noting the People had agreed Gonzalez would "not be subject to prosecution . . . for any related charges not already included in the Information pending against him." In addition, under the cooperation agreement, the promised immunity "extend[ed] to additional uncharged criminal conduct" Gonzalez might disclose either during interviews with the San Francisco District Attorney's Office or during his testimony in the Lane matter. The People represented to the court that Gonzalez "faced no risk of prosecution if he performed his end of the bargain[.]"

explained why we should consider it, given that his opening brief specifically tells us we need not address it.

III.    *Gonzalez's Implied IAC Claim Fails.*

None of the headings in Gonzalez's opening brief specifically asserts an IAC claim. Nevertheless, he alludes to the inadequacy of his counsel in informing him about the waiver of his appellate rights, and an IAC claim seems implied by his argument. Insofar as we can discern, Gonzalez contends his trial counsel was ineffective in exploring a motion to withdraw his plea "as it related to [him] having made a knowing, intelligent and voluntary waiver of his rights." The reason counsel was allegedly ineffective was, as explained above, because he was subject to a conflict of interest arising from his negotiation of the cooperation agreement. Although we could consider this argument forfeited because it was not placed under a separate heading (*People v. McElroy* (2005) 126 Cal.App.4th 874, 884, fn. 3), we will address it.

A claim of conflicted representation is one variety of an IAC claim. (*People v. Mai* (2013) 57 Cal.4th 986, 1009-1010 (*Mai*).) "[T]o obtain reversal of a criminal verdict, the defendant must demonstrate that (1) counsel labored under an *actual* conflict of interest that adversely affected counsel's performance, and (2) absent counsel's deficiencies arising from the conflict, it is reasonably probable the result of the proceeding would have been different." (*Id.* at p. 1010, italics added.) A defendant is required to make an "outcome-determinative" showing of prejudice to obtain relief. (*People v. Doolin* (2009) 45 Cal.4th 390, 420.)

"In undertaking [this] inquiry, we are . . . bound by the record. But where a conflict of interest causes an attorney *not* to do something, the record may not reflect such an omission. We must therefore examine the record to determine (i) whether arguments or actions omitted would likely have been made by counsel who did not have a conflict of interest, and (ii) whether there may have been a tactical reason (other than the asserted conflict of interest) that might have caused any such omission." (*People v. Cox* (2003) 30 Cal.4th 916, 949.)

As is evident from the preceding sections of this opinion, Gonzalez cannot satisfy either prong of the *Mai* analysis. He has not sufficiently articulated the nature of the alleged conflict of interest, and thus he has raised at most " 'a mere theoretical division of loyalties.' [Citation.]" (*People v. Roldan* (2005) 35 Cal.4th 646, 673.) He thus has not shown "that any potential conflict of interest actually materialized." (*Mai, supra,* 57 Cal.4th at p. 1013.) He likewise has not shown "that a different strategy would likely have been adopted by competent, unconflicted counsel." (*Id.* at p. 1014.) Indeed, Gonzalez does not even identify what such a strategy might have been. Having failed to show that unconflicted counsel would have pursued a different strategy, Gonzalez necessarily fails to demonstrate he would have achieved a different result in the absence of the alleged conflict. (See *id.* at p. 1010.)

IV. *The Restitution Order Was Proper.*

Gonzalez contends the restitution he was ordered to pay to victim Kelvin Amos, a named victim in the later-dismissed third count of the amended information, is unlawful because the trial court failed to obtain a waiver under *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*). (See § 1192.3, subd. (b) ["If restitution is imposed which is attributable to a count dismissed pursuant to a plea bargain . . . the court shall obtain a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754 from the defendant as to the dismissed count."].) It is undisputed that the trial court did not obtain a *Harvey* waiver with respect to count III of the information. We nevertheless conclude this claim is barred.

First, we doubt this claim can survive the waiver of appellate rights included in Gonzalez's second plea agreement. Although such waivers ordinarily do not bar claims of error occurring after entry of the plea agreement, the California Supreme Court has held that a waiver of appellate rights bars claims of sentencing error where the plea agreement specifies the sentence to be imposed, and sentence is imposed in accordance with the agreement. (*Panizzon, supra,* 13 Cal.4th at pp. 85-86.) Here, the trial court ordered Gonzalez to pay $9,645 in restitution to Amos. At the time Gonzalez's plea was taken, his counsel noted there was a restitution order as to a co-defendant in the amount of $9,645. The prosecutor explained there were two such orders, since there were two

11

victims.  The trial court then stated it would be retaining jurisdiction to impose a lawful amount and said there was an outstanding restitution order in the range of $9,600.  These figures match the order ultimately imposed.

Even if this claim is not barred by Gonzalez's waiver of appellate rights, it is nevertheless barred by his counsel's failure to object to the amount at sentencing. (*People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218 [objection to amount of restitution forfeited by failure to raise issue in trial court].)  In addition, even without a *Harvey* waiver, the trial court could have awarded restitution for harm resulting from the dismissed charge because it was transactionally related to the offense to which Gonzalez admitted.  (*People v. Klaess* (1982) 129 Cal.App.3d 820, 823.)  Gonzalez pled guilty to the charge that on February 13, 2009, he committed assault with a firearm on Frank Chaparro.  The dismissed third count charged Gonzalez with committing assault with a firearm on Kelvin Amos on the same date.  The assault to which Gonzalez pleaded guilty and the assault that was the subject of the dismissed count occurred on the same date at the same time.  The trial court could therefore view them as transactionally related.  (See *People v. Beagle* (2004) 125 Cal.App.4th 415, 421 [transactional relationship exists when "it could at least be inferred that some action of the defendant giving rise to the dismissed count was also involved in the admitted count"].)  Since the trial court could properly have viewed the offenses as transactionally related and thus awarded restitution based on the dismissed charge, trial counsel was not ineffective for failing to object.

DISPOSITION

The judgment is affirmed.

12

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.