FILED
United States Court of Appeals
Tenth Circuit

**June 10, 2015**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 13-1227

TIMOTHY JOHN VANDERWERFF,

Defendant-Appellant.

------------------------------

BLAIN D. MYHRE,

Amicus Curiae.

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:12-CR-00069-JLK-1)**

O. Dean Sanderford, Assistant Federal Public Defender, Denver, Colorado
(Virginia L. Grady, Interim Federal Public Defender, Denver, Colorado, with him
on the brief), for Defendant-Appellant.

James C. Murphy, Assistant United States Attorney, Denver, Colorado (John F.
Walsh, United States Attorney, Denver, Colorado, with him on the brief), for
Plaintiff-Appellee.

Blain David Myhre, Blain Myhre, LLC, Englewood, Colorado, as Amicus Curiae.

Before **LUCERO**, **HARTZ**, and **HOLMES**, Circuit Judges.

**HOLMES**, Circuit Judge.

Defendant-Appellant Timothy Vanderwerff appeals from his conviction and sentence for receipt of child pornography, arguing that the district court erred in rejecting his initial (first) plea agreement with the government because it contained an appellate waiver. The government agrees with Mr. Vanderwerff, as does an appointed amicus counsel, and all parties urge reversal and remand for re-sentencing. Having thoroughly considered the matter, we also agree that such relief is appropriate. Specifically, we conclude that the district court's rejection of Mr. Vanderwerff's plea agreement was premised on legally erroneous and irrelevant considerations; consequently, its action constituted an abuse of discretion. Exercising our jurisdiction under 28 U.S.C. § 1291, we **reverse** and **remand** this case, instructing the district court to vacate its judgment and sentence, to permit Mr. Vanderwerff to withdraw his guilty plea, and to conduct further proceedings not inconsistent with this opinion.

**I**

In February 2012, a federal grand jury indicted Mr. Vanderwerff for three child-pornography-related offenses in the United States District Court for the District of Colorado. Count 1 charged Mr. Vanderwerff with receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), and Counts 2 and 3 charged him with possessing child pornography in violation of 18 U.S.C.

2

§ 2252A(a)(5)(B).

Mr. Vanderwerff and the government entered into a plea agreement. Under the agreement, Mr. Vanderwerff would plead guilty to Count 2 and the government would dismiss Counts 1 and 3. Mr. Vanderwerff also promised not to seek a departure or variance under the United States Sentencing Guidelines Manual ("U.S.S.G." or "the Guidelines") or to request a sentence of less than five years. For its part, in addition to offering to dismiss Counts 1 and 3, the government committed itself to submitting a motion to the district court to grant Mr. Vanderwerff credit for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 if Mr. Vanderwerff's behavior warranted the adjustment. Most relevant to the instant appeal, the plea agreement included a provision by which Mr. Vanderwerff waived his right to appeal.[1]

As a result of this initial plea agreement, Mr. Vanderwerff faced a statutory

---

[1] Although the waiver of appellate rights was broad, it was not absolute. The pertinent text of the waiver read:

> [T]he defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria: (1) the sentence imposed is above the maximum penalty provided in the statute of conviction, (2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upwardly, or (3) the Court determines that the offense level is greater than that calculated by the parties below and imposes a sentence based upon that higher offense level determination.

Supp. R. at 6 (Plea Agreement, dated Apr. 10, 2012).

sentencing range of zero to ten years of imprisonment. *See* 18 U.S.C. § 2252A(b)(2) (providing for a sentence of "not more than 10" years for violating § 2252A(a)(5), as alleged in Count 2).

At an initial change-of-plea hearing, the district court declined to either accept or reject the plea. After listening to arguments from both parties in favor of the plea, the district court cited an ostensible "tectonic shift in our jurisprudence" brought about by the Supreme Court's decision in *Lafler v. Cooper*, --- U.S. ----, 132 S. Ct. 1376 (2012). R., Vol. III, at 10 (Change-of-Plea Hr'g Tr., dated Apr. 10, 2012). The court found that *Lafler* suggested that a sentencing court should be "a participant in the plea-bargaining process" and renounce "the judicial branch['s prior] . . . Pontius Pil[ate] attitude about plea bargains." *Id.* at 10–11. The district court further found that the ultimate sentence should only have as its predicate "the criteria listed in [18 U.S.C. §] 3553" and suggested that Mr. Vanderwerff's plea agreement—which, notably, contained an appellate waiver—might violate those criteria. *Id.* at 11.

The district court then offered some thoughts on plea bargaining in general, which it cautioned were not going to be "determinative" of its ruling but which constituted a "continuing concern." *Id.* at 11–12. In this regard, the district court opined as to "the significant disrepute that obsessive plea bargaining has in this country" and indicated that it had "to pay attention to that." *Id.* at 12.

The district court then returned to the subject of 18 U.S.C. § 3553(a)'s

4

sentencing factors and specifically focused on the role those factors purportedly should play in its consideration of the propriety of the appellate waiver in Mr. Vanderwerff's plea agreement. Significantly, the court perceived a nexus between its task in accepting or rejecting appellate waivers and our court's responsibilities in reviewing trial judges' discretionary sentencing determinations under § 3553(a). In this regard, it stated:

> One of the things that concerns me, deeply, is the language in some of the 10th Circuit cases, which suggests, to me, that the Judges on the 10th Circuit are not paying attention to their obligations in reviewing the decisions of Judges of the District Court. I have said that in the [*Aguirre*][2] case, [in] what is, I hope, a more diplomatic way than I just said it now. . . . [Section] 3553[] seems, to me, . . . A, exclusive; and B, *determinative of whether or not a waiver can be accepted.*

R., Vol. III, at 12–13 (emphasis added). In light of these considerations, the district court ordered the parties to submit supplemental briefs "on the application of the [§] 3553 factors to this particular sentence of this particular case." *Id.* at 13.

After reviewing the parties' supplemental briefs, the district court rejected the plea agreement. The court began its ruling by noting the decrease in criminal trials and the growth in guilty pleas—phenomena that it bemoaned. Then, turning to the plea bargain at hand, the district court found the dismissal of Counts 1 and 3 in return for the guilty plea to Count 2 "not unconscionable" and concluded as a

---

[2] *United States v. Aguirre*, No. 11-CR-00149-JLK, 2011 WL 3036126 (D. Colo. July 25, 2011).

5

result that it was "appropriate to defer to prosecutorial discretion" regarding the charge bargain.[3] R., Vol. I, at 45 (Order, filed June 28, 2012). However, the district court rejected the appellate waiver as "unjustified." *Id.*

The court observed that "[i]n the wake of the Supreme Court's holding that the [Guidelines] are merely advisory, not mandatory, *see United States v. Booker*, 543 U.S. 220, 247 (2005), no circuit court has revisited the enforceability of appellate waivers." R., Vol. I, at 43. According to the court, "[s]entencing, post-*Booker*, requires a trial court to consider context and to apply criteria rather than perform a mechanical or clerical entry of a matrixed judgment." *Id.* It thus reasoned that this post-*Booker* sentencing regime called for courts to proceed cautiously and selectively in approving appellate waivers:

> The responsibility of appellate review is to decide how well the sentencing judge has established the sentence within this described discipline. That is fundamentally dissimilar to the pre-*Booker* function of determining whether an arithmetic calculation has been executed correctly. Rather, reviewing sentences under an abuse of discretion standard is a complex inquiry meant to assure that the judicial administration of justice is relevant to the values and expectations of society.
>
> Indiscriminate acceptance of appellate waivers undermines the ability of appellate courts to ensure the constitutional validity of convictions and to maintain consistency and reasonableness in sentencing decisions. . . . Thus, such waivers should only be included where they are justified by the facts and circumstances of a particular case.

---

[3] As discussed *infra*, "charge bargains" are "predicated on the dismissal of some counts" in the indictment. *United States v. Robertson*, 45 F.3d 1423, 1437 (10th Cir. 1995).

*Id.* at 44.  The court ultimately concluded that Mr. Vanderwerff's waiver was not so justified.

The district court acknowledged the parties' view that our precedent generally supported the use of appellate waivers, inasmuch as we have found them beneficial to the criminal justice system and its various actors, but concluded that this general perspective on appellate waivers was "irrelevant to [its] determination of whether an appellate waiver is justified in the context of this case." *Id.* at 45.  The court was similarly unimpressed with the litigants' "case-specific" explanations, *id.*, for the waiver—which, notably, they made under the rubric of § 3553(a) because the court required them to do so.  The court rejected the government's argument that Mr. Vanderwerff's appellate waiver evidenced his acceptance of responsibility and remorse because it "ignore[d] the nature of Mr. Vanderwerff's bargain," especially the significant benefit he was receiving "[i]n exchange for" the waiver.  *Id.* at 46.  Likewise, the court found unpersuasive the parties' argument that "the dismissal of charges 1 and 3 w[ould] result in a statutory sentencing range that better accommodates the interests of justice and the strictures of 18 U.S.C. § 3553." *Id.*  Specifically, envisioning a nexus between the § 3553(a) factors and the propriety of the appellate waiver, the court opined: "[T]he parties seek to limit Mr. Vanderwerff's sentence to a range of five to ten years of incarceration.  Although these sentencing consequences may have induced Mr. Vanderwerff to accept the government's plea bargain, they

7

*do not justify including an appellate waiver*." *Id.* (emphasis added). The district court concluded that "[t]he interests of justice . . . are best served by permitting the calm and deliberate review by the Court of Appeals" of the sentence. *Id.* Mr. Vanderwerff sought review of the court's action regarding the plea agreement, but we dismissed the appeal for lack of jurisdiction, concluding that it was premature.

The parties then negotiated a new plea agreement. The new deal omitted the appellate waiver and stipulated to the dismissal of Counts 2 and 3 (instead of Counts 1 and 3), leaving only Count 1, a receipt count, for purposes of the guilty plea. Because this changed the offense designated for entry of the guilty plea from possession to receipt of child pornography, Mr. Vanderwerff's statutory sentencing range increased from zero to ten years, as contemplated by the initial plea agreement, to five to twenty years. *See* 18 U.S.C. § 2252A(b)(1). In other words, under the new plea agreement, Mr. Vanderwerff was subject to potentially greater statutory penalties—a five-year mandatory minimum and a higher maximum of twenty years.

The government did commit in the new plea agreement to seek a sentence reduction for acceptance of responsibility and to urge the district court to impose a sentence of no more than twelve years in prison. The new agreement also included a provision reserving to Mr. Vanderwerff the right to appeal from the district court's earlier rejection of the first plea agreement. The district court accepted the new plea agreement, whereupon it reiterated that it had rejected the

8

earlier appellate waiver because the "Section 3553 factors are exclusive" and the waiver was not "tied into those exclusive sentencing factors." R., Vol. IV, at 21 (Change-of-Plea Hr'g Tr., dated Aug. 9, 2012).

The presentence report ("PSR") confirmed the statutory minimum and maximum, as embodied in the plea agreement, and calculated an advisory Guidelines range of 188 to 235 months in prison.[4] However, the PSR recommended a downward variance to 108 months in light of Mr. Vanderwerff's conduct, advanced age, and physical and mental health. The government proposed a sentence of 144 months instead. The district court ultimately adopted the PSR's recommendation and imposed a sentence of 108 months. Mr. Vanderwerff timely appealed.

On appeal, the government agrees with Mr. Vanderwerff that the district court abused its discretion in rejecting the first plea agreement, and it joins Mr. Vanderwerff's request for reversal. To ensure a full and comprehensive consideration of the issues raised by this appeal, we appointed pro bono amicus counsel to submit a brief expressing an "independent assessment of the legal propriety of the district court's challenged sentence decision." Order, No. 13-1227, at 2 (10th Cir., filed Mar. 25, 2014). Amicus counsel filed that brief on May 2, 2014; counsel agreed with the parties that the district court's conduct

---

[4] In preparing the PSR, the United States Probation Office utilized the 2012 edition of the Guidelines.

9

amounted to an abuse of discretion.

## II

Mr. Vanderwerff contends that the district court abused its discretion by rejecting the first plea agreement because it contained an appellate waiver. We review a district court's decision not to accept a plea agreement for abuse of discretion. *See United States v. Veri*, 108 F.3d 1311, 1314 (10th Cir. 1997); *Robertson*, 45 F.3d at 1437; *see also United States v. Rakes*, 510 F.3d 1280, 1286 (10th Cir. 2007) ("A district court enjoys substantial discretion in deciding whether to accept or reject a plea agreement . . . ."). "A district court abuses its discretion if its adjudication of a claim is based upon an error of law . . . ." *United States v. Crowe*, 735 F.3d 1229, 1244 (10th Cir. 2013), *cert. denied*, --- U.S. ----, 134 S. Ct. 1565 (2014); *see United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013) ("A district court abuses its discretion when it relies on an incorrect conclusion of law . . . ."); *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009) ("An abuse of discretion occurs when the district court commits an error of law . . . ."); *cf. United States v. Nacchio*, 555 F.3d 1234, 1276 (10th Cir. 2009) (en banc) (McConnell, J., dissenting) ("This court has held time and time again that a district court abuses its discretion if it applies the wrong legal standard."). Similarly, when a district court predicates its ruling on an "improper and irrelevant factor," this error "provides a strong indication that the district court abused its discretion." *Rio Grande Silvery Minnow v. Bureau of*

*Reclamation*, 601 F.3d 1096, 1132 (10th Cir. 2010).

We conclude that the district court's rejection of Mr. Vanderwerff's initial plea agreement because it contained an appellate waiver was premised on legally erroneous and irrelevant considerations and, consequently, that this action amounted to an abuse of discretion. We begin by providing a brief overview of the law of plea bargains and then turn to our analysis of the bases for the district court's decision.

## A

The "starting point" for an inquiry into a district court's rejection of a guilty plea is Rule 11 of the Federal Rules of Criminal Procedure. *Robertson*, 45 F.3d at 1437. Rule 11 provides: "An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement." Fed. R. Crim. P. 11(c)(1). The district court may then either accept or reject that agreement in its substantial discretion, "[b]ut that discretion is not without limit." *Rakes*, 510 F.3d at 1286.

Plea bargains are commonly either "charge bargains," where the prosecutor agrees to drop some charges in exchange for a guilty plea on others, or "sentence bargains," where the prosecutor agrees to support, or at least not oppose, a particular sentence. *Robertson*, 45 F.3d at 1437. Courts enjoy considerable discretion in their consideration of sentence bargains because "the prosecution's role . . . is strictly advisory," but judicial discretion is more limited with respect

11

to charge bargains because such bargains "are primarily a matter of discretion for the prosecution" and the "court's sentencing discretion is implicated only as an incidental consequence of the prosecution's exercise of executive discretion." *Id.* at 1437–38; *see also United States v. Miller*, 722 F.2d 562, 565 (9th Cir. 1983) (warning that "courts should be wary of second-guessing prosecutorial choices" because they "do not know which charges are best initiated at which time, which allocation of prosecutorial resources is most efficient, or the relative strengths of various cases and charges" (citations omitted)).

We have previously stated that in charge bargains, "a court's sentencing discretion is implicated . . . in precisely the same manner it is implicated by prosecutorial decisions to bring charges in the first place, *where prosecutorial discretion is nearly absolute*." *Robertson*, 45 F.3d at 1438 (emphasis added). "Thus, while district courts may reject charge bargains in the sound exercise of judicial discretion, concerns relating to the doctrine of separation of powers counsel hesitancy before second-guessing prosecutorial choices." *Id.*

The parties and amicus counsel all agree that the plea agreement at issue here is properly characterized as a charge bargain. In that regard, the agreement indicated that "the government may recommend any term of imprisonment up to the statutory maximum for the offense of conviction." Supp. R. at 3. Furthermore, as is typical of a charge bargain, the agreement was predicated on the dismissal of charges (i.e., Counts 1 and 3) in exchange for a guilty plea to

12

another charge (i.e., Count 2). *See United States v. Carrigan*, 778 F.2d 1454, 1462 (10th Cir. 1985) ("[C]harge bargains[] [are] predicated on the dismissal of other charges . . . ."); *accord Robertson*, 45 F.3d at 1437.

The district court did not seriously object to the specific terms of the charge bargain in the parties' first plea agreement—which included the government's agreement to dismiss a possession and a receipt count in exchange for Mr. Vanderwerff's agreement to plead guilty to a possession count (i.e., Count 2). However, following the court's rejection of the appellate-waiver component of the plea agreement, the agreement itself could not be sustained and the court denied it in its entirety. The parties subsequently arrived at another plea agreement, but the government was apparently unwilling, absent the appellate waiver, to offer the same bargain regarding the charges. The bargain it offered subjected Mr. Vanderwerff to potentially more severe penalties, involving a five-year mandatory minimum and a twenty-year statutory maximum.

We now examine the considerations that animated the district court's decision to reject the appellate waiver. We are constrained to conclude that those considerations were legally erroneous and irrelevant. Accordingly, the district court abused its discretion.

**B**

**1**

The district court's reliance on the Supreme Court's decision in *Lafler* as a

13

basis for rejecting the appellate waiver in Mr. Vanderwerff's first plea agreement evinces a serious misunderstanding of that case. The district court referred to *Lafler* as effecting a "tectonic shift in our jurisprudence," R., Vol. III, at 10; *accord id.*, Vol. IV, at 21, regarding the constitutional salience of the plea-bargaining process and the district courts' role in it. Specifically, the court noted that *Lafler* "raise[d] plea bargaining to the level of constitutional scrutiny," *id.*, Vol. IV, at 21, and also suggested that trial courts should be "a participant in the plea-bargaining process," *id.*, Vol. III, at 10. Apparently, the court reasoned that these features of *Lafler* gave the court greater leeway to scrutinize and reject the appellate waiver in Mr. Vanderwerff's plea agreement. However, the court grievously misread *Lafler*'s import. And, consequently, its rejection of the waiver was predicated on an error of law and amounted to an abuse of discretion.

First and foremost, *Lafler* was a case relating to ineffective assistance of counsel in the plea-bargaining process—not the matters addressed by the district court. Shortly after it was issued, we had occasion to summarize *Lafler*'s ruling: "*Lafler* held that an attorney who rendered constitutionally deficient advice to reject a plea bargain was ineffective where his advice caused his client to reject the plea and go to trial, only to receive a much harsher sentence." *In re Graham*, 714 F.3d 1181, 1182 (10th Cir. 2013) (per curiam); *see also United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012) (interpreting *Lafler* as speaking to the standards governing ineffective assistance of counsel).

14

Even in this specific ineffective-assistance area, *Lafler* did not purport to dramatically break new ground. As we observed in discussing the case, "the Court reached its decision by applying the well-established principles regarding the assistance of counsel that were initially set forth in *Strickland v. Washington*, [466 U.S. 668 (1984)]." *Graham*, 714 F.3d at 1182–83; *see also Hare v. United States*, 688 F.3d 878, 879 (7th Cir. 2012) (holding that in *Lafler*, "the Court's language repeatedly and clearly spoke of applying an established rule to the present facts"); *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012) (per curiam) (noting that *Lafler* is "merely an application of the Sixth Amendment right to counsel, as defined in *Strickland*, to a specific factual context").

To be sure, *Lafler* did acknowledge in support of its holding that plea bargaining plays a critical role in the criminal justice system. *See* 132 S. Ct. at 1388 (rejecting the petitioner's argument that "[a] fair trial wipes clean any deficient performance by defense counsel during plea bargaining" because "[t]hat position ignores the reality that criminal justice today is for the most part a system of pleas, not a system of trials"); *see also Missouri v. Frye*, --- U.S. ----, 132 S. Ct. 1399, 1407 (2012) (acknowledging that plea bargaining is "central to the administration of the criminal justice system"). However, with a nod to the district court's tectonic-shift metaphor, we find it patent that this understanding of plea bargaining's importance is hardly earth-shaking news. Furthermore, contrary to the district court's reasoning, we discern nothing in *Lafler* to suggest

15

that it introduced a new role for trial courts in the plea-bargaining process, let alone one that would make the judiciary a more active player in that process.

In sum, the district court's reading of *Lafler* is, at bottom, untenable: nothing in that decision dramatically pushed the plea-bargaining process into the constitutional limelight or purported to alter the role of the trial judge in that process. Accordingly, the district court could not reasonably glean from *Lafler* a greater license to reject the appellate waiver in Mr. Vanderwerff's plea agreement. Insofar as this rejection was predicated on the district court's misreading of *Lafler*, it constituted an error of law and an abuse of discretion.

**2**

The district court also justified its rejection of the appellate waiver in Mr. Vanderwerff's first plea agreement on the ground that the enforceability of appellate waivers had been placed in doubt by *Booker*. It suggested that *Booker* called upon courts to "revisit[ ] the enforceability of appellate waivers," R., Vol. I, at 43, and, more specifically, to act cautiously and selectively when entertaining requests from litigants to approve them. This is so, reasoned the court, because *Booker* gave trial courts discretion in applying sentences, and appellate review is necessary to determine whether those courts are properly exercising their discretion. Notably, as it did in its reading of *Lafler*, the district court seemingly construed *Booker* as obliging it to exercise a wider scope of discretion in scrutinizing and rejecting appellate waivers. However, the district

16

court has unfortunately failed to divine the true substance of *Booker*. This misunderstanding engendered legal error because the court at least partly based its rejection of Mr. Vanderwerff's appellate waiver on it. The court thereby abused its discretion.

*Booker*'s core holding is that the Guidelines are advisory. *See* 543 U.S. at 245 ("So modified, the federal sentencing statute makes the Guidelines effectively advisory." (citation omitted)); *see also, e.g.*, *Gall v. United States*, 552 U.S. 38, 46 (2007) ("As a result of our decision [in *Booker*], the Guidelines are now advisory . . . ."); *United States v. Haggerty*, 731 F.3d 1094, 1098 n.2 (10th Cir. 2013) ("*Booker* . . . explains [that] the Guidelines are merely advisory . . . ."); *United States v. Perez-Jiminez*, 654 F.3d 1136, 1144 (10th Cir. 2011) ("The Supreme Court's decision in *United States v. Booker* rendered the Guidelines advisory." (citation omitted)). There is nothing in *Booker* that speaks to appellate waivers at all. Indeed, the only discussion of plea bargaining in *Booker* is the neutral comment that after that decision, "[p]rosecutors and defense attorneys would still resolve the lion's share of criminal matters through plea bargaining." 543 U.S. at 248. The fact that the Guidelines are no longer mandatory after *Booker* has no evident connection to appellate waivers one way or the other.

Indeed, one cannot logically infer from *Booker*'s grant of additional sentencing discretion to trial courts, on the one hand, the imposition of an obligation on those courts, on the other, to restrict a defendant's ability to

17

knowingly and voluntarily waive his or her appellate rights. If the Court was concerned in *Booker* that trial courts' discretionary sentencing decisions would be insulated from appellate review by appellate waivers—a proposition that we doubt, for the reasons noted *infra*—it did not even intimate this, much less explicitly issue a ruling to redress the purported concern. Operating on a blank slate, we would be disinclined absent any textual foothold in *Booker* to conclude that the Court contemplated such a ruling. *Cf. Cressman v. Thompson*, 719 F.3d 1139, 1156 (10th Cir. 2013) ("Circuit courts should be very careful to suggest the Supreme Court has implicitly reversed itself, especially because, of course, the Court can and should speak for itself."); *Levine v. Heffernan*, 864 F.2d 457, 461 (7th Cir. 1988) ("Lower courts . . . , out of respect for the great doctrine of *stare decisis*, are ordinarily reluctant to conclude that a higher court precedent has been overruled by implication."). Fortunately, however, the slate is not free from helpful markings.

Though we apparently have never examined the merits of the precise reading of *Booker* that the district court embraced—*viz.*, that *Booker* obliges trial courts to restrict the approval of appellate waivers because of concern that the waivers might insulate judges' discretionary sentencing decisions from appellate review—the district court was mistaken when it asserted that "no circuit court has revisited the enforceability of appellate waivers" in light of *Booker*. R., Vol. I, at 43. Indeed, the Fifth Circuit rejected a construction of *Booker* analogous to the

18

one the district court espoused here. *See United States v. Oliver*, 630 F.3d 397, 414–15 (5th Cir. 2011). There, the defendant argued that the appellate waiver in his plea agreement violated *Booker* because "it [wa]s over broad." *Id.* at 414. This was apparently so because the waiver had the effect of shielding the sentencing court's discretionary reasonableness analysis—which is permissible post-*Booker*—from appellate review. The Fifth Circuit summarized the defendant's argument in this regard: "Without citing any authority, Oliver states that an appeal waiver that prevents a defendant from challenging his sentence on any ground, including reasonableness, violates *Booker*." *Id.* Then the court proceeded to make short work of that argument, summarily rejecting it as follows: "Contrary to Oliver's assertion, nothing in *Booker* prohibits appeal waivers." *Id.* at 414–15. In other words, the *Oliver* court quickly dispatched the notion that *Booker* somehow invalidated appellate waivers insofar as they insulated a district court's discretionary sentencing decisions from appellate review. Like the *Oliver* court, we are not inclined to accept the district court's view that, for similar reasons, *Booker* imposed an obligation on trial courts to carefully scrutinize and restrict approval of appellate waivers.

Indeed, we have routinely enforced appellate waivers in the post-*Booker* era. *See, e.g.*, *United States v. Garcia-Ramirez*, 778 F.3d 856, 857 (10th Cir. 2015) (per curiam); *United States v. Tanner*, 721 F.3d 1231, 1233 (10th Cir. 2013) (per curiam); *United States v. Cudjoe*, 634 F.3d 1163, 1164–65 (10th Cir.

19

2011); *United States v. Leyva-Matos*, 618 F.3d 1213, 1215 (10th Cir. 2010). And so have other circuits. *See, e.g.*, *United States v. Adams*, 780 F.3d 1182, 1183 (D.C. Cir. 2015); *United States v. Purser*, 747 F.3d 284, 286 (5th Cir.), *cert. denied*, --- U.S. ----, 135 S. Ct. 403 (2014); *United States v. Grimes*, 739 F.3d 125, 126 (3d Cir. 2014); *United States v. Brizan*, 709 F.3d 864, 866 (9th Cir. 2013); *United States v. Copeland*, 707 F.3d 522, 524 (4th Cir. 2013); *United States v. Guzman*, 707 F.3d 938, 939 (8th Cir. 2013); *United States v. Toth*, 668 F.3d 374, 374 (6th Cir. 2012); *United States v. Kilcrease*, 665 F.3d 924, 926 (7th Cir. 2012); *United States v. Arevalo*, 628 F.3d 93, 94 (2d Cir. 2010); *United States v. Segarra*, 582 F.3d 1269, 1273 (11th Cir. 2009) (per curiam); *United States v. Soto-Cruz*, 449 F.3d 258, 259 (1st Cir. 2006). This caselaw suggests that *Booker* has not cast a shadow (even tacitly) on the propriety of appellate waivers.

In sum, in our view, the district court misread *Booker* and committed legal error when it used that case to partly justify its decision to reject Mr. Vanderwerff's appellate waiver. In this respect, the court abused its discretion.

**3**

The district court similarly erred as a matter of law in making 18 U.S.C. § 3553(a) a mainstay of its rationale for rejecting Mr. Vanderwerff's appellate waiver. The district court assigned great weight to the § 3553(a) factors in rejecting the waiver. *See* R., Vol. IV, at 21 ("[The] Section 3553 factors are exclusive in sentencing and form the basis for my not accepting the earlier

20

proposed plea disposition with a waiver of right to appeal because it wasn't tied into those exclusive sentencing factors."). However, as we see it, ordinarily, the § 3553(a) factors should play no direct role in a district court's determination of whether to accept or reject an appellate waiver in a plea agreement.

In its very title, § 3553(a) indicates that its "[f]actors [are] to be considered in *imposing a sentence*." 18 U.S.C. § 3553(a) (emphasis added). Thus, the customary and obvious province for operation of these factors is the sentencing phase of criminal proceedings, not the entry-of-guilty-plea phase. In our view, the district court committed legal error by effectively mapping the sentencing factors of § 3553(a) onto the rubric for determining whether to accept or reject a plea agreement that contains an appellate waiver. As the government succinctly put it, the court's "requirement that appeal waivers be justified under § 3553(a) confuses a defendant's substantive right to a fair determination of his sentence[] with the procedural right to seek further review of that sentence." Aplee. Br. at 16.

Notably, the district court's approach was seemingly animated by concerns that are of the same or similar stripe as those at work in the court's misguided reading of *Lafler* and *Booker*. Specifically, by incorporating the § 3553(a) factors into the process for accepting and rejecting plea agreements containing appellate waivers, the court ostensibly sought to ensure (to the extent that it could) that our court maintained an opportunity to review the propriety of trial judges'

21

applications of § 3553(a)'s sentencing factors—*viz.*, that we had a chance to review the legal soundness of trial judges' post-*Booker* exercises of discretionary sentencing authority. In this regard, the district court was "deeply" concerned that, in its own estimation, the judges of the Tenth Circuit might not be "paying attention to their obligations in reviewing the decisions of Judges of the District Court." R., Vol. III, at 12.

However, we have our responsibilities firmly in hand with respect to trial judges' applications of § 3553(a)'s factors. And, regrettably, the district court's efforts to assist us caused it to import those sentencing factors into a foreign sphere—the entry-of-guilty-plea context—and that was legal error.

Indeed, the court's tender of succor is fundamentally off-base because it would have the effect of hobbling a tool that we have explicitly acknowledged yields manifold benefits—appellate waivers. In this regard, we have said:

> [P]ublic policy strongly supports plea agreements that include an appeal waiver. A waiver of appellate rights can be of great value to an accused as a means of gaining concessions from the government. Appeal waivers also benefit the government by saving [it] the time and money involved in arguing appeals. Society benefits from the finality that waivers bring.

*United States v. Elliott*, 264 F.3d 1171, 1174 (10th Cir. 2001) (first alteration in original) (omission omitted) (citations omitted) (quoting *United States v. Michelsen*, 141 F.3d 867, 873 (8th Cir. 1998); *United States v. Littlefield*, 105 F.3d 527, 530 (9th Cir. 1997) (Hall, J., concurring)) (internal quotation marks

omitted).  In applying its misguided § 3553(a) approach, the district court deemed these general benefits of appellate waivers "irrelevant."  R., Vol. I, at 45. Nothing could be further from the truth.

In sum, the district court committed legal error in attempting to interject § 3553(a)'s sentencing factors into the calculus regarding whether to accept or reject the appellate waiver in Mr. Vanderwerff's first plea agreement. Consequently, in this respect, the district court abused its discretion.

**4**

Lastly, though our prior rulings in Parts II.B.1–.3, *supra*, are sufficient to support our decision to reverse the district court's judgment and sentence, we observe that the district court's negative frame of mind toward the plea-bargaining process seems to have detrimentally influenced its decision to reject the appellate waiver in Mr. Vanderwerff's first plea agreement.  However, in our view, the district court lacked any legal basis for setting its face against plea bargaining.  Contrary to the court's suggestion, plea bargaining is not "of dubious legality" because it (purportedly) "sacrific[es] constitutional rights on the altar of efficiency."  R., Vol. I, at 43.  True, the district court stated that its skepticism concerning plea bargaining would not be "determinative" of its ruling on Mr. Vanderwerff's first plea agreement, *id.*, Vol. III, at 11, but its patent expression of invective toward the institution of plea bargaining strongly suggests that the court's negative feeling about the institution was a factor (even if not a

23

dispositive one) in its decision to reject the agreement at issue containing the appellate waiver. Tellingly, the district court announced that it would be inspecting the agreement under "close scrutiny" due to its apparent antipathy toward plea bargaining as a whole. *Id.*, Vol. I, at 43.

By now it is blackletter law, however, that plea bargaining is strongly favored. *See, e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 71 (1977) ("Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned."); *Santobello v. New York*, 404 U.S. 257, 260–61 (1971) (calling plea bargaining "an essential component of the administration of justice" and "highly desirable . . . for many reasons"). Indeed, though as noted in Part II.B.1, *supra*, the district court erred in concluding that *Lafler* had anything to say about district courts' proper role in the plea-bargaining process, it is noteworthy that a major premise of *Lafler* and the Court's related decision, *Frye*, was the idea that plea bargaining is "central to the administration of the criminal justice system." *Frye*, 132 S. Ct. at 1407; *see Lafler*, 132 S. Ct. at 1388 (rejecting the petitioner's argument that "[a] fair trial wipes clean any deficient performance by defense counsel during plea bargaining" because "[t]hat position ignores the reality that criminal justice today is for the most part a system of pleas, not a system of trials").

Moreover, for many reasons, appellate waivers in plea agreements are

24

particularly favored. *See Elliott*, 264 F.3d at 1174 ("[P]ublic policy strongly supports plea agreements that include an appeal waiver." (alteration in original) (quoting *Littlefield*, 105 F.3d at 530 (Hall, J., concurring)) (internal quotation marks omitted)); *see also United States v. Hahn*, 359 F.3d 1315, 1318 (10th Cir. 2004) (en banc) (per curiam) ("[W]e generally enforce plea agreements and their concomitant waivers of appellate rights.").[5] Simply stated, the district court's personal policy preferences on the plea-bargaining issue—or, indeed, our own—are irrelevant. Binding precedent has firmly established the legality of plea bargaining and appellate waivers in plea agreements. The district court was not empowered to tilt the balance against Mr. Vanderwerff's first plea agreement containing an appellate waiver because of its negative views toward plea bargaining.

The district court's decision is particularly troubling because Mr. Vanderwerff's plea agreement involved a charge bargain, where the zone of judicial discretion is ordinarily quite limited. *See Robertson*, 45 F.3d at 1437–38. Notwithstanding the district court's laments that charge bargains "shunt[ ] to the

---

[5]     In this regard, several panels of our court have clearly indicated as much in persuasive nonprecedential decisions. *See United States v. Hill*, 568 F. App'x 549, 554 (10th Cir. 2014) ("We have emphasized the importance of preserving the benefit of the government's bargain by enforcing appellate waivers." (internal quotation marks omitted)); *United States v. Roberts*, 189 F. App'x 761, 763 (10th Cir. 2006) (per curiam) ("Concerns of fairness, integrity, and public reputation favor enforcing the appellate waiver."); *United States v. Silva*, 189 F. App'x 698, 702 (10th Cir. 2006) (per curiam) (same).

margins" its "act of judging," R., Vol. I, at 42, the law expressly contemplates that charge bargaining is a province primarily for the exercise of prosecutorial—not judicial—discretion. *See Robertson*, 45 F.3d at 1438.[6]

The effect of the district court's decision to reject Mr. Vanderwerff's first plea agreement because it contained an appellate waiver was inconsistent with the charge-bargain nature of the plea agreement. By relying on legally erroneous and irrelevant considerations to reject the agreement—most notably, § 3553(a)'s sentencing factors—the court effectively crippled, and failed to accord proper deference to, the government's exercise of prosecutorial discretion in fashioning a

---

[6]    Indeed, more generally, the district court's complaints regarding its lack of involvement in the plea-bargaining process are at odds with the framework of plea bargaining established by the federal rules, which *discourage* active judicial participation in that process. *See* Fed. R. Crim. P. 11(c)(1) ("The court must not participate in [plea-bargaining] discussions."); *United States v. Cano-Varela*, 497 F.3d 1122, 1132 (10th Cir. 2007) ("Rule 11 'is designed to totally eliminate judicial pressure from the plea bargaining process.'" (quoting *United States v. Casallas*, 59 F.3d 1173, 1178 (11th Cir. 1995)) (internal quotation marks omitted)). Plea bargains are negotiated agreements between prosecutors and defendants, "just like other bargained-for exchanges." *Littlefield*, 105 F.3d at 530 (Hall, J., concurring). We have found that excluding the trial judge from the bargaining process "minimizes the risk that the defendant will be judicially coerced into pleading guilty, . . . preserves the impartiality of the court, and . . . avoids any appearance of impropriety." *Cano-Varela*, 497 F.3d at 1132 (quoting *United States v. Kraus*, 137 F.3d 447, 452 (7th Cir. 1998)) (internal quotation marks omitted). Though the district court bemoaned the "push . . . to relegate [trial judges] to approving or disapproving proposed plea bargains and . . . determining an appropriate sentence," R., Vol. I, at 42, it is beyond peradventure that these acts are of great importance to individual defendants and the proper administration of the criminal justice system. And the district court has not demonstrated that the law actually contemplates a different or broader role for the trial court in this process.

26

charge bargain. For example, the court flatly rejected the government's argument that Mr. Vanderwerff's appellate waiver evidenced his acceptance of responsibility and remorse—which, significantly, the government made under the rubric of § 3553(a) as the court required—because it "ignore[d] the nature of Mr. Vanderwerff's bargain," especially overlooking the significant benefit he was receiving "[i]n exchange for" the waiver. R., Vol. I, at 46. Likewise, the court found unpersuasive the parties' argument (again under the court-mandated framework) that "the dismissal of charges 1 and 3 w[ould] result in a statutory sentencing range that better accommodates the interests of justice and the strictures of 18 U.S.C. § 3553." *Id.* Specifically, reimagining a linkage between the § 3553(a) factors and the propriety of the appellate waiver, the court opined: "[T]he parties seek to limit Mr. Vanderwerff's sentence to a range of five to ten years of incarceration. Although these sentencing consequences may have induced Mr. Vanderwerff to accept the government's plea bargain, they *do not justify including an appellate waiver*." *Id.* (emphasis added). Following the court's rejection of the plea agreement containing the appellate waiver, the government apparently decided under its court-constricted scope of discretion that it only was appropriate to offer Mr. Vanderwerff a different charge bargain that was considerably less favorable to him—involving a five-year mandatory minimum and a twenty-year maximum. Thus, the district court's decision—predicated on legally erroneous and irrelevant factors—to reject Mr.

27

Vanderwerff's first plea agreement because it contained an appellate waiver is particularly problematic due to its conflict with the settled law of plea bargaining, under which courts accord considerable discretion to the government in crafting charge bargains.

In sum, far from being (as the district court would have it) a tool of "dubious legality," *id.* at 43, plea bargaining has been consistently endorsed by the courts and recognized as serving a critical role in the administration of our criminal justice system. Insofar as the district court rested to any appreciable degree its decision to reject Mr. Vanderwerff's first plea agreement containing an appellate waiver on its negative views toward plea bargaining, the court committed legal error and thereby abused its discretion.

## C

We have concluded that the district court's principal bases for rejecting the appellate waiver in Mr. Vanderwerff's first plea agreement—and, consequently, the agreement itself—were legally erroneous and involved irrelevant considerations. It follows ineluctably that, in effecting the rejection, the district court abused its discretion. We recognize that when conducting abuse-of-discretion analysis, we have on occasion engaged in harmless-error analysis—either at the request of a party or, "in an appropriate case," *sua sponte*. *United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999) (quoting *United States v. Torrez-Ortega*, 184 F.3d 1128, 1136 (10th Cir. 1999)) (internal

28

quotation marks omitted). We decline to engage in such an analysis here. Neither party has asked us to examine whether the error was harmless, and both parties, as well as amicus counsel, urge us to reverse the decision and remand the case. Under these circumstances, this case is not within the ambit of cases appropriate for *sua sponte* harmless-error review. Accordingly, we reverse the district court's judgment and sentence.

### III

For the foregoing reasons, we **REVERSE** and **REMAND** this case with instructions to the district court to **VACATE** its judgment, to permit Mr. Vanderwerff to withdraw his guilty plea, and to conduct any necessary further proceedings not inconsistent with this opinion.

13-1227 – *United States v. Vanderwerff*

**HARTZ**, Circuit Judge, concurring:

The district court's critique of plea bargaining would give pause to any thoughtful person. But I agree with the opinion of Judge Holmes that the district court committed legal error in its opposition to appellate waivers. I write separately to focus on one error, the assessment that the earlier judicial approval of such waivers has been undermined by the transformation of the Sentencing Guidelines from mandatory to advisory under *United States v. Booker*, 543 U.S. 220 (2005), which was accompanied by the adoption of abuse-of-discretion review.

*Booker* has not led to a sea change in appellate review of district-court sentencing. About the only ways in which appellate review has become more stringent since that decision is that we now review (1) whether the district court adequately explained why it imposed a sentence outside the guidelines range and (2) whether the sentence was substantively reasonable. Yet reversal on the first ground is unusual and easily cured; and, at least in this circuit, reversal on the second ground is even rarer. Eliminating the possibility of such reversal through an appellate waiver is hardly sufficiently significant to require judicial re-examination of appellate waivers. Moreover, apparently most appellate waivers are like the one in this case in that they do not apply to challenges to sentences outside the guidelines range and therefore do not restrict the new avenues of review.

1