FILED
United States Court of Appeals
Tenth Circuit

July 28, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JOSÉ DURAN-NEVAREZ,

      Defendant - Appellant.

No. 07-8071
(D.C. No.06-CR-140-WFD-1)
(District of Wyoming)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

## I. INTRODUCTION

On May 17, 2006, José Duran-Nevarez was named in twenty-one counts of

an indictment with multiple defendants. On February 28, 2007, the Defendant-

Appellant agreed to a plea agreement under Fed. R. Crim. Proc. 11(c)(1)(C) under

which Mr. Duran-Nevarez would plead guilty to seven of the twenty-one charges

against him and the remaining fourteen charges would be dismissed as to him.

The district court held a change of plea hearing on March 2, 2007 to allow Mr.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P.32.1 and 10th
Cir. R. 32.1.

Duran-Nevarez to plead guilty. Mr. Duran-Nevarez did not admit the facts underlying one of the counts in the guilty plea. The district court ended the hearing without Mr. Duran-Nevarez pleading guilty. A status conference was held on March 12, 2007. After the conclusion of the status conference, another change of plea hearing was held on March 14, 2007, where Mr. Duran-Nevarez pled guilty to six of the twenty-one charges.

Sentencing occurred on August 31, 2007. The plea agreement contained an accord between the parties that a specific 30 year sentence was appropriate. Under Fed. Crim. R. Proc. 11(c)(4), the court was required to impose that specific sentence if the plea agreement was accepted. The court sentenced Mr. Duran-Nevarez to 30 years in prison, five years of supervised release, a $600 special assessment, restitution in the amount of $354.72, and a $1,000 fine.

Mr. Duran-Nevarez argues on appeal that the district court improperly participated in plea negotiations and wrongfully imposed the fine in violation of the terms of the plea agreement. He asks that his guilty plea and sentence be vacated and that the case be remanded for further proceedings before a different district court judge. In the alternative, he asks that the fine component of his sentence be vacated. We have appellate jurisdiction under 28 U.S.C. § 1291.

## II. BACKGROUND

In the original indictment, Mr. Duran-Nevarez was charged in twenty-one

counts of the multi-defendant indictment.[1]  Two change of plea hearings occurred.

The first, on March 2, 2007, involved a plea agreement stating that Mr. Duran-

Nevarez would plead guilty to seven of the twenty-one charges in the indictment.[2]

During the hearing, the court stated:

> [Y]ou and your lawyer would have to assess the adequacy of the
> government's evidence and determine in your own mind whether or

[1] **(Count 1)** conspiracy to possess with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A); **(Count 2)** conspiracy to launder money, in violation of 18 U.S.C. § 1956(a)(2)(A), (a)(2)(B)(i) and 1956(h); **(Count 3)** distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)A); **(Count 5)** maintaining drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) and (2); **(Counts 10, 13, 21, 26, 45, 46)** use of a communication facility to facilitate a felony drug offense, in violation of 21 U.S.C. § 843(b); **(Count 11)** possession with intent to distribute methamphetamine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2; **(Counts 16, 36)** possession with intent to distribute methamphetamine, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2; **(Count 25, 41)** possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); **(Count 48)** sexual abuse of a minor and aiding and abetting, in violation of 18 U.S.C. §§ 2243(a)(1) and (2), 1153, and 2; **(Count 59)** carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); **(Count 60)** using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); **(Count 62)** possession with intent to distribute methamphetamine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2; **(Count 64)** illegal re-entry of previously deported alien into the United States, in violation of 8 U.S.C. § 1326(a)(1) and (2) and (b)(2); and **(Count 65)** criminal forfeiture, in violation of 21 U.S.C. § 853. R.I, Doc. 28.

[2] The initial plea agreement had Mr. Duran-Nevarez pleading guilty to these seven counts: 1, 2, 5, 48, 59, 62, and 65.  R.III, at ¶ 2.  The government agreed to dismiss at sentencing the remaining counts as to him.  *Id.* at ¶ 12b.  The parties stipulated that the Defendant's offense involved more than 1.5 kilograms of actual methamphetamine.  *Id.* at ¶ 8, R.VII at 22-23.

not the government is likely able to prove your guilt; and if you thought there was a benefit to pleading guilty – the benefit being you avoid a life sentence – the potential for a life sentence which is the potential here – that it would be prudent for you to enter into a plea and you have a thorough discussion regarding the contents of the plea agreement before you signed it, then we can proceed here.

R.VI at 10. Later in the hearing, the court went on to state:

I would tell you very candidly, counsel and Mr. Duran[-Nevarez], that if you had gone to trial, and if – it's a big "if" – but if a jury of your peers found you guilty of these offenses, your sentence would be closer to life in prison than it is to 30 years; and I would never support the transfer of a person doing 30 years to life to another prison in another country where that sentence might be reduced by that country's authorities.

*Id.* at 17.

However, Mr. Duran-Nevarez disputed the facts regarding the money laundering conspiracy count (Count 2) which prompted the court to end the hearing without accepting the plea agreement. The district court stated that Mr. Duran-Nevarez would have one more chance to enter a guilty plea before trial would begin.

Prior to the second change of plea hearing, a status conference was held on March 12, 2007 involving the district court judge, Defense counsel, Mr. Duran-Nevarez, and an interpreter. The government filed a motion to supplement the record with a document #722 "Notice Setting a Status Conference and Hearing on All Pending Motions" conceding that the Defendant-Appellant and his attorney were both present at the status conference on March 12, 2007. Supplemental

-4-

Appendix, Vol. II, Document no. 722: "Notice Setting a Status Conference and

Hearing on All Pending Motions for March 12, 2007." At the outset, the

Assistant United States Attorney explained the purpose of the status conference:

> with respect to Mr. José Duran[-Nevarez], as the Court is aware, Mr. Duran[-Nevarez] attempted to change his pleas pursuant to the plea agreement Friday before last, and there were some issues with respect to Count Two and perhaps more than just that count.
>
> Mr. Rogers, [Federal Public Defender for Mr. Duran-Nevarez] on behalf of Mr. Duran[-Nevarez], and I are working hopefully to come to terms on those issues and re-approach the Court with a second attempt for a change of plea. There is apparently a change-of-plea setting for March 28. Candidly, Your Honor, our hope is that if we can put this together, we do that sooner than later.

R.VIII at 4. During the status conference held on March 12, 2007,[3] the district

court judge stated:

> Your client's maximum is life. Now, the plea he has with the government now pending before the Court is 30 years, not an easy sentence to swallow. But when we say 'life' in federal court, surely you've told your client that 'life' in a United States Courthouse means 'life without the possibility of parole.'
>
> So the fact that you are perhaps urging him to enter a plea doesn't come as any surprise to me, but the fact is it's your client's option. If he wants a trial, let the jury assess the evidence. If your assessment is wrong and they acquit him, good for him.
> . . .
> Some clients listen to advice; some don't. You and I will have to be respectful of Mr. Duran[-Nevarez]'s decision if he decides not to

---

[3] As noted earlier, the government supplemented the record prior to oral argument with Document #722 entitled "Notice Setting a Status Conference and Hearing on All Pending Motions." This document clearly shows, as does the transcript from the March 12, 2007 status conference, that Mr. Duran-Nevarez was indeed present during the status conference.

> listen to your advice, <u>but he has to understand that he has to accept</u> <u>the consequences if he is wrong; and in this case the consequence is</u> <u>life imprisonment without the possibility of parole</u>.

*Id.* at 20-21 (emphasis added).

At the March 14, 2007 change of plea hearing, Mr. Duran-Nevarez pled guilty to six of the twenty-one charges.[4] On August 31, 2007, the court held the sentencing hearing. The court was bound to impose the thirty year sentence contained in the plea agreement under Fed. R. Crim. Proc. 11(c)(4). The full terms of the sentence are as follows: Mr. Duran-Nevarez received a thirty year term of imprisonment, five years of supervised release, a $600 special assessment, restitution in the amount of $354.72, and a $1,000 fine.

### III. DISCUSSION

There are two issues in the instant case: (1) whether the district court violated Fed. R. Crim Proc. 11(c)(1) by improperly participating in plea discussions and (2) whether the district court violated the plea agreement by

---

[4] In the second and accepted plea agreement, Mr. Duran-Nevarez pled guilty to six of the seven counts from the first plea agreement. In the March 14 agreement, Mr. Duran-Nevarez did not plead guilty to count 65 which was not part of the plea agreement. The counts that Mr. Duran-Nevarez pled guilty to and the corresponding sentences are as follows:
(Counts 1 and 62) 300 months' imprisonment to run concurrently,
(Counts 2 and 5) 240 months' imprisonment concurrent to Counts 1 and 62,
(Count 48) 180 months' imprisonment concurrent to Counts 1, 2, 5, and 62,
(Count 59) 60 months' imprisonment to run consecutively to all other counts.
The plea agreement also stipulated that no fine would be imposed. R.III, Doc. 703 at 6.

imposing a $1,000 fine whereas the plea agreement stated that no fine would be imposed. The government has confessed error as to the imposition of the fine. Thus, our inquiry focuses only on the first issue.

*A. Standard of Review*

The primary question before us is the proper standard of review: plain error or *de novo*. This question was noted in *United States v. Cano-Varela*, 497 F.3d 1122 (10th Cir. 2007). However, *Cano-Varela* left the question unanswered because we found that the error was sufficient to require vacating the sentence under both a *de novo* standard and a plain error standard. Due to the similarity between the instant case and *Cano-Varela*, we find that we are presented with a situation in the instant case that is analogous to *Cano-Varela*. Therefore, we decline to answer definitively the question of the proper standard of review.[5]

*B. Fed. R. Crim. Proc. 11(c)(1) Violations*

The leading case in our circuit on Fed. R. Crim. Proc. 11(c)(1) violations is

---

[5] The discussion surrounding the proper standard of review for situations involving improper participation by the court in plea negotiations is set forth in *Cano-Varela*, 497 F.3d at 1132. For example, we reasoned that plain error review might not be appropriate where "all three legally trained participants in this proceeding shared the view that the plea agreement negotiated by defense counsel and the prosecutor was in [the defendant's] best interest, and . . . the district judge's communications with [the defendant] were intended to assist defense counsel in persuading the defendant to follow counsel's advice." *Id.* Further, we explained that the Defendant's counsel would not object because the plea agreement would be in concert with Defense counsel's advice and recommendation for the client. *Id.* We find that a similar situation existed in the instant case.

*Cano-Varela*, 497 F.3d 1122 (10th Cir. 2007). In pertinent part, that rule provides plainly:

> (c) Plea Agreement Procedure
>     (1) In General. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. <u>The court must not participate in these discussions</u>.

Fed. R. Crim Proc. 11(c)(1) (emphasis added).

In *Cano-Varela*, we stated that "the unambiguous mandate of Rule 11 prohibits the participation of the judge in plea negotiations under any circumstances: it is a rule that . . . admits of no exceptions." 497 F.3d at 1132 (internal quotations and citations omitted). We explained that "[e]xcluding the judge from the plea discussions...serves three purposes: it minimizes the risk that the defendant will be judicially coerced into pleading guilty, it preserves the impartiality of the court, and it avoids any appearance of impropriety." *Id.* at 1132 (internal quotations and citations omitted). Furthermore, we held that "any discussion of the penal consequences of a guilty plea as compared to going to trial is inherently coercive, no matter how well-intentioned." *Id.* at 1133 (internal quotations and citations omitted).

In *Cano-Varela* we also stated that "Rule 11's stringent prohibitions...do not apply once the parties have concluded their agreement, and the prosecutor has laid it out in open court, even if the agreement is not formal and binding." *Cano-Varela*, 497 F.3d at 1132 (internal quotations and citations omitted). "In other

words, once the parties have 'hammered out' the details of their agreement, Rule 11[(c)] does not prevent the sentencing judge from questioning the defendant regarding the terms, consequences, and acceptance of the plea agreement or from providing the defendant with information relating to these matters." *Id.*

The government argues in its brief that the plea agreement was already "hammered out" and presented in open court. Brief of Appellee at 20-21. This is not an entirely true statement. While the March 2 change of plea hearing did involve the presentation of the first plea agreement, that plea agreement was not accepted by the court because Mr. Duran-Nevarez did not admit the factual circumstances surrounding Count 2 (money laundering) and therefore did not admit the elements of that crime. Thus, he did not plead guilty and the court could not accept the plea agreement.

The March 2 plea agreement, although presented to the court, was not the same plea agreement presented to the court at the March 14 change of plea hearing. The March 14 plea agreement did not contain a guilty plea to Count 65 (criminal forfeiture, in violation of 21 U.S.C. § 853). Thus, while similar, these are not the same plea agreements and more negotiations were clearly necessary before the Defendant-Appellant would plead guilty. This necessarily requires the conclusion that the plea agreement had not been hammered out until March 14 because the plea agreement had changed in a matter of twelve days.

The differences between the plea agreements may stem from the March 12

status conference held by the court with Mr. Duran-Nevarez, his interpreter, and Defense counsel present. During the proceedings, the court made a numerical comparison between the amount of time to be served, were the Defendant-Appellant to plead guilty and if he were to go to trial and be found guilty by a jury. As we stated in *Cano-Varela*, "any discussion of the penal consequences of a guilty plea as compared to going to trial is inherently coercive, no matter how well-intentioned." 497 F.3d at 1133 (internal quotations and citations omitted).

Candidly, the court discussed the advice of Mr. Duran-Nevarez's counsel and explained that "[s]ome clients listen to advice; some don't. You and I will have to be respectful of Mr. Duran[-Nevarez]'s decision if he decides not to listen to your advice, but he has to understand that he has to accept the consequences if he is wrong; and in this case the consequence is life imprisonment without the possibility of parole." R. VIII at 20-21. This statement resembles the discussion in *Cano-Varela* identifying why the proper standard of review is difficult to define. We have little doubt that the court, along with the other legally trained participants, had good intentions. However, *Cano-Varela* controls the situation in the instant case and regardless of the propriety of the court's actions, these types of comparisons between time to be served in the plea agreement and after a jury conviction cannot be made. We cannot say that these statements were not coercive nor can we say that they are not the root of the reason for Mr. Duran-Nevarez's change of plea.

-10-

# IV. CONCLUSION

We **VACATE** Mr. Duran-Nevarez's guilty plea and sentence and **REMAND** for further proceedings in accordance with this opinion, and before a different district court judge. *See United States v. Cano-Varela*, 497 F.3d at 1134.

**IT IS SO ORDERED.**

Entered for the Court

William J. Holloway, Jr.
Circuit Judge