**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 12, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MANUEL DE JESUS SANDOVAL-
ENRIQUE,

    Defendant - Appellant.

No. 16-2043

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:15-CR-01030-JB-1)**
_____

Margaret A. Katze, Assistance Federal Public Defender, Office of the Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

C. Paige Messec, Assistant United States Attorney (Damon P. Martinez, United States Attorney, with her on the brief), Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

_____

Before **BRISCOE**, **EBEL**, and **MURPHY**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

In this direct criminal appeal, Defendant-Appellant Manuel Sandoval-Enrique seeks to withdraw his guilty plea to one count of unlawfully reentering the United States after a previous removal. Sandoval-Enrique pled guilty without the benefit of

any plea agreement. In seeking now to withdraw that plea, Sandoval-Enrique contends that the district court abused its discretion in rejecting two previous plea agreements he reached with the Government and then improperly inserted itself into the plea negotiations. Having jurisdiction under 28 U.S.C. § 1291 and finding no error that would permit Sandoval-Enrique to withdraw his guilty plea, we AFFIRM his conviction.

## I. THIS APPEAL REMAINS JUSTICIABLE

As a threshold jurisdictional matter, see United States v. Vera-Flores, 496 F.3d 1177, 1180 (10th Cir. 2007), the Government contends this appeal is moot because Sandoval-Enrique has fully served his prison sentence imposed in this case and has now been deported. We disagree with the Government's argument, and DENY the Government's motion to dismiss the appeal for mootness.

The Government is correct that an appeal challenging a sentence becomes moot when the defendant fully serves that sentence, see Lane v. Williams, 455 U.S. 624, 631 (1982), unless he can show that he remains subject to collateral consequences even after completing the sentence, see United States v. Juvenile Male, 564 U.S. 932, 936 (2011).

But Sandoval-Enrique is not challenging his sentence; instead he is seeking to withdraw his guilty plea and to have his conviction vacated.[1] Such relief would be

---

[1] In his notice of appeal, Sandoval-Enrique stated generally that he "appeals . . . the Judgment" entered in his criminal case. (D. Ct. Doc. 35.) In his docketing statement filed with this court while Sandoval-Enrique was still in prison, he indicated that he was, in part, challenging his sentence, but he unambiguously and consistently

2

available should he prevail on the grounds for relief he asserts on appeal.  See Lane,

455 U.S. at 630-31 (recognizing defendant may seek to withdraw guilty plea and

have conviction vacated to correct error in plea process); see also United States v.

Vanderwerff, 788 F.3d 1266, 1267, 1279 (10th Cir. 2015) (vacating conviction and

ordering that defendant be allowed to withdraw his guilty plea because district court

abused its discretion in rejecting prior plea agreement); United States v. Cano-Varela,

497 F.3d 1122, 1123, 1135 (10th Cir. 2007) (vacating defendant's guilty plea because

district court improperly participated in plea negotiations).

An appeal such as this one challenging a conviction does not become moot

when the defendant completes his prison sentence because we presume that a

defendant remains subject to collateral consequences that continue to flow from the

existence of the challenged conviction even after the sentence has been served.  See

Spencer v. Kemna, 523 U.S. 1, 8-12 (1998); Sibron v. New York, 392 U.S. 40, 50-58

(1968).  The fact that a defendant has also been deported does not change that

---

challenged the district court's refusal to accept his plea agreements, which was the underpinning for the underlying judgment of conviction.  When Sandoval-Enrique was released from prison, the Government moved to dismiss this appeal as moot, apparently based on Sandoval-Enrique's assertion in his docketing statement that he was, at least in part, challenging his sentence.  Sandoval-Enrique filed his opposition to the motion to dismiss on the same day that he filed his opening brief.  In both of those pleadings, Sandoval-Enrique argued that he was challenging his conviction, not his sentence, and as relief he sought to withdraw his guilty plea.  After Sandoval-Enrique stated, in opposition to the motion to dismiss, that he was challenging his conviction rather than his sentence, the Government asserted additional mootness arguments that are unavailing.

presumption.  See United States v. Quezada-Enriquez, 567 F.3d 1228, 1232 n.2 (10th Cir. 2009).

The Government argues that it can rebut this presumption if it can show that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction. Assuming, without deciding, that the presumption is rebuttable and can be rebutted in this way, the Government has failed to make such a showing here.

The Government contends that the existence of the conviction Sandoval-Enrique challenges in this appeal will not affect his immigration status because he has prior convictions that already bar him from seeking lawful admission to the United States for twenty years from the date of his most recent deportation and the conviction at issue here will not change that.[2]  Accepting without deciding the accuracy of the Government's assertion, this still means that in twenty years Sandoval-Enrique could seek to reenter the United States lawfully.  The Government has not shown that, at that time, "there is no possibility," Sibron, 392 U.S. at 57, that

---

[2] The Government appears to be relying on 8 U.S.C. § 1182(a)(9)(A) to make this argument.  Both § 1182(a)(9)(A)(i) and (ii) provide in pertinent part that "[a]ny alien who has been ordered removed . . . and who again seeks admission . . . within 20 years in the case of a second or subsequent removal . . . is inadmissible."  The Government actually cites in its brief to 8 U.S.C. § 1182(b)(9)(A).  But that statutory provision was repealed in 1990.

4

the existence of the conviction he challenges here would subject Sandoval-Enrique to any collateral consequences.[3]  Thus, the appeal is not moot.

## II.  SANDOVAL-ENRIQUE IS NOT ENTITLED TO WITHDRAW HIS GUILTY PLEA

We turn then to the merits of this appeal.  Sandoval-Enrique seeks to withdraw his guilty plea, claiming that the district court 1) abused its discretion in rejecting two plea agreements he reached with the Government, and 2) improperly inserted itself into the plea negotiations.  Neither argument warrants relief.

### A. Factual background

Sandoval-Enrique, a citizen of Honduras, fled with his family from Honduras to Mexico, where they were granted asylum.  From Mexico, Sandoval-Enrique then came to the United States unlawfully to work.  On multiple occasions when authorities discovered Sandoval-Enrique in the United States illegally, he was deported without being charged criminally.  But on three prior occasions (October 2001, May 2006, September 2006), Sandoval-Enrique was charged and convicted of unlawfully entering or reentering the United States after having been previously removed.  On each of those occasions, Sandoval-Enrique served some time in jail and

---

[3] Perez v. Greiner, on which the Government relies, is factually distinguishable because there, the defendant had an earlier conviction that "permanently barred him from this country," regardless of the validity of the conviction he challenged in that appeal.  296 F.3d 123, 126 (2d Cir. 2002) (emphasis added).  In light of that, the Second Circuit held that "the currently challenged robbery conviction can have no meaningful effect on his admissibility and hence cannot serve as a possible collateral consequence."  Id.  Moreover, we have not adopted or rejected the Second Circuit's view in Perez of the effect of a permanent deportation on a challenge to a conviction, and we need not do so here.  See Quezada-Enriquez, 567 F.3d at 1231-32.

was then deported.  As a result of his third conviction, Sandoval-Enrique served sixteen months in prison before being removed from the United States.

This current criminal prosecution began when the Border Patrol discovered Sandoval-Enrique unlawfully in New Mexico in February 2015.  The United States charged him with unlawfully reentering the United States after removal, in violation of 8 U.S.C. § 1326(a), (b).  Pursuant to the District of New Mexico's "fast-track" program, Sandoval-Enrique entered into a Fed. R. Crim. P. 11(c)(1)(C) plea agreement with the Government that provided that he would plead guilty and waive his appeal rights in return for a four-level reduction in his base offense level and a sentence within the guideline range calculated using that lowered offense level, between two and eight months in prison.[4]

This Rule 11(c)(1)(C) agreement would have been binding on the district court had the court accepted it.  The district court, however, rejected the plea agreement. See Fed. R. Crim. P. 11(c)(3)(A).  In doing so, the court noted that Sandoval-Enrique had previously received a sixteen-month sentence for his most recent unlawful reentry conviction, in 2006, and in light of that, the sentencing range to which the parties had agreed in this case, two to eight months in prison, did not give the district court the ability to impose a sentence that promotes respect for the law, affords adequate deterrence, or provides a just punishment, as 18 U.S.C. § 3553(a) requires.

---

[4] See U.S.S.G. § 5K3.1 ("Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides.").

6

At the defense's request, the district court continued the sentencing proceeding.[5]  Three months later, the parties entered into a second Rule 11(c)(1)(C) plea agreement, this time agreeing to a ten-month sentence.  The district court rejected that agreement, too, because it did not

> give the Court the options that it needs to sentence [Sandoval-Enrique] correctly.  Sixteen months [served on his third conviction] did not keep him out of the United States; 145 days [served on his first conviction] didn't keep him out; 43 . . . days [served on his second conviction] didn't keep him out.  He's had six deportations.
>
> I don't think a sentence of ten is sufficient to reflect the 3553(a) factors.  It's not deterring him.  And I don't think a sentence of ten months is appropriate. . . .

(III R. 92.)  The district court again informed Sandoval-Enrique that he had the "right to withdraw" his "plea of guilty and proceed to trial."  (Id.)

Defense counsel then asked the court if it could "possibly share any more of its thoughts on what would be a fair sentence and also the reason behind it?  Is it just the fact that he had a 16 month sentence and came back after that, and therefore, anything less than 16 months would not be satisfactory?"  (Id. 93.)  The court responded:

> Well, as I indicated, I didn't think the sentences that were being presented last time, which would have been eight months—so you've given me two more months—I don't think that either one of those [is] adequate.  He has arrests in the country for other things.  I know he

---

[5] As required by Rule 11(c)(5), the district court, after rejecting the first plea agreement, notified Sandoval-Enrique that he could withdraw his guilty plea. Defense counsel instead requested that the court continue the sentencing.  When the parties reached the second plea agreement, Sandoval-Enrique entered a new guilty plea specifically under the second agreement.  The same procedure occurred after the court rejected the second plea agreement.

7

hasn't been convicted of those, but he has had interactions with law enforcement when he's been in the United States. So I think with some interaction with law enforcement, the sentence needs to reflect the seriousness of the offense. And I don't think giving him something in the eight month range or ten month range that's been presented twice to the Court promotes respect for the law or provides a just punishment, affords adequate deterrence, either at a specific or general level. I can't use supervised release. I'm comfortable with a guideline sentence. I'm not inclined to go outside of the guideline. But I do think he probably needs to be sentenced at the high end of the guideline range without any sort of Rule 11(c)(1)(C) agreement.

(III R. 93-94.) At Sandoval-Enrique's request, the court again continued the sentencing proceeding.

Three months later, Sandoval-Enrique pled guilty to the single count charged against him—unlawful reentry after prior removal—without any plea agreement. With no break for entering into a fast-track plea agreement, Sandoval-Enrique's advisory guideline range was ten to sixteen months in prison. (Had Sandoval-Enrique gone to trial and been convicted, his sentencing range would have, instead, been fifteen to twenty-one months in prison.[6]) The court imposed a prison sentence at the top of the range, sixteen months, and no term of supervised release.

---

[6] The presentence report ("PSR"), without objection, calculated Sandoval-Enrique's adjusted offense level to be twelve. Under the first plea agreement, the PSR then subtracted four offense levels for the fast-track plea and another two levels for accepting responsibility by pleading guilty. That made his total offense level six and, combined with his criminal history category of III, resulted in an advisory range of two to eight months in prison. Those same offense-level reductions would have applied to the second plea agreement, but in that agreement, the parties, in any event, simply agreed to a ten-month sentence. When Sandoval-Enrique later pled guilty without any plea agreement, he would have been entitled only to the two-offense-level reduction for acceptance of responsibility, resulting in an offense level of ten which, combined with his criminal history category III, produced an advisory guideline range of ten to sixteen months in prison. If he had instead gone to trial and

**B. The district court did not abuse its discretion in rejecting Sandoval-Enrique's two plea agreements**

A district court has "substantial discretion" to accept or reject a plea agreement. Vanderwerff, 788 F.3d at 1271. Sandoval-Enrique, nevertheless, contends that the district court, in rejecting his two plea agreements, abused its discretion in three ways.[7]

**1. The district court realized it could impose a term of supervised release**

One way a district court can abuse its discretion is "if its adjudication of a claim is based upon an error of law." Id. (internal quotation marks omitted). Sandoval-Enrique argues that occurred here. Based in part on the district court's statement during the second sentencing proceeding that "I can't use supervised release" (III R. 94), Sandoval-Enrique contends that the district court incorrectly believed that it could not, as a matter of law, impose a term of supervised release. This purportedly harmed Sandoval-Enrique because the Government had argued that, in order to deter Sandoval-Enrique's criminal conduct, the district court could impose

---

been convicted, Sandoval-Enrique would not have received the two-offense-level reduction for accepting responsibility. In that case, his offense level would have been twelve and, combined with a criminal history category III, would have resulted in an advisory range of fifteen to twenty-one months in prison.

[7] Sandoval-Enrique entered three guilty pleas, one preceding each of his three sentencing proceedings. We reject the Government's argument that because his "initial" plea was knowing and voluntary, Sandoval-Enrique waived any challenges to the district court's later rejection of his plea agreements. (Aple. Br. 15.) See generally Tollett v. Henderson, 411 U.S. 258, 267 (1973) (recognizing that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process," waiving claims of constitutional deprivations that "occurred prior to the entry of the guilty plea" (emphasis added)).

9

a shorter prison sentence and a longer term of supervised release; if Sandoval-Enrique then unlawfully returned to the United States after his removal, he would be subject to both a prison term for violating the terms of his supervised release and a new criminal prosecution.

The district court certainly had authority to impose a term of supervised release. See 18 U.S.C. § 3583(a). Relevant here, the sentencing guidelines provide that "[t]he court shall order a term of supervised release to follow imprisonment . . . when a sentence of imprisonment of more than one year is imposed," U.S.S.G. § 5D1.1(a)(2), except that "[t]he court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment," id. § 5D1.1(c) (emphasis added). Application note 5 to that guideline further states that,

> [u]nless such a defendant legally returns to the United States, supervised release is unnecessary. If such a defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by a new prosecution. The court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case.

Id. § 5D1.1, app. n.5. The district judge, thus, had legal authority to impose a term of supervised release, but the judge had a pragmatic reason to exercise his discretion not to impose supervised release in this case because the defendant was likely to be deported after completing his incarceration time.

10

Viewing the sentencing proceedings as a whole, it is clear that the district court realized that. Both the presentence report and the prosecutor informed the court that it could impose a term of supervised release. During the third sentencing proceeding, the district judge specifically referenced U.S.S.G. § 5D1.1(c) in deciding not to impose a term of supervised release and further noted that other judges "struggle with this as well. Some impose terms of supervised release. I do not." (III R. 113.) Finally, in its written decision entered a few days after the final sentencing proceeding, the district court again acknowledged that the guidelines recommended against imposing a term of supervised release where, as here, it was likely that Sandoval-Enrique would be deported after being released from prison; and recognized that "some judges impose supervised release in sentences like this one," but further noted that the district court here "has not adopted that approach. The Court believes that . . . it should do what the Guidelines recommend and not impose supervised release . . ." (I R. 89).

It is clear, then, that the district court realized it had authority to impose a term of supervised release, but decided not to do so, relying on U.S.S.G. § 5D1.1(c). That was not an abuse of discretion.[8] We also reject Sandoval-Enrique's further

_____

[8] The Government argues that this court's review of this claim should be for plain error, instead of an abuse of discretion. If we reviewed for plain error, we would conclude, at step one of that analysis, that the district court did not err, so our conclusion would be the same. See Cano-Varela, 497 F.3d at 1131 (setting forth four steps in reviewing for plain error).

11

contention that the district court failed to explain its reasons for not imposing a term of supervised release. The district court thoroughly explained its reasoning.

**2. The district court considered that there was no fast-track program available when the Western District of Texas sentenced Sandoval-Enrique to sixteen months in prison on a prior conviction**

The district court, in imposing a sixteen-month sentence here, relied in part on the fact that the previous sixteen-month sentence Sandoval-Enrique received in the Western District of Texas had deterred him for some time, but did not completely deter him from returning to the United States unlawfully. On appeal, Sandoval-Enrique contends that the district court in this case did not consider that there was no fast-track program available when the Texas district court imposed that earlier sentence. But defense counsel and the Government made that point several times to the district court here. The district court simply did not find that point persuasive because, however the Western District of Texas reached the earlier sixteen-month sentencing decision, that amount of prison time had not adequately deterred Sandoval-Enrique's criminal conduct. The record makes clear that the district court considered this argument and did not abuse its discretion in concluding, nevertheless, that deterrence would not be served by a shorter sentence.

**3. The district court did not subvert the purpose of the fast-track program by rejecting either plea agreement**

We are also not persuaded by Sandoval-Enrique's assertion that the district court abused its discretion in rejecting the two plea agreements because doing so subverted the fast-track program. "Fast-track" programs are designed to permit

12

"defendants accused of certain immigration offenses [to] plead guilty early in the process and waive their rights to file certain motions and to appeal, in exchange for a shorter sentence." United States v. Morales-Chaires, 430 F.3d 1124, 1127 (10th Cir. 2005). However, the district court's "substantial discretion" to accept or reject a plea agreement generally, Vanderwerff, 788 F.3d at 1271, applies as well to plea agreements under a fast-track program, see United States v. Martinez, 660 F. App'x 659, 663 (10th Cir. 2016) (unpublished); United States v. Macias-Gonzalez, 219 F. App'x 814, 817 (10th Cir. 2007) (unpublished).[9] "[A] district court is not required to accept a fast-track plea agreement." Martinez, 660 F. App'x at 663. Further, the district court's discretion is very broad when, as here, the fast-track plea agreement involves a bargain regarding sentencing, rather than a charging decision.

We also reject Sandoval-Enrique's suggestion that the district court failed to explain adequately its rejection of the fast-track agreements at issue here. The court carefully and thoroughly explained its reasons for rejecting those agreements.

**4. Conclusion as to the district court's rejection of the plea agreements**

For these reasons, we conclude the district court did not abuse its discretion in rejecting the two plea agreements that Sandoval-Enrique had with the Government.

**C. The district court did not improperly participate in the parties' plea negotiations**

Sandoval-Enrique's next argument for withdrawing his guilty plea is based on Fed. R. Crim. P. 11(c)(1), which provides that "[a]n attorney for the government and

---

[9] Though unpublished, the reasoning of these decisions is persuasive.

13

the defendant's attorney . . . may discuss and reach a plea agreement.  <u>The court must not participate in these discussions</u>."  (Emphasis added.)  "[E]xcluding the trial judge from the bargaining process 'minimizes the risk that the defendant will be judicially coerced into pleading guilty, . . . preserves the impartiality of the court, and . . . avoids any appearance of impropriety."  <u>Vanderwerff</u>, 788 F.3d at 1277 n.6 (quoting <u>Cano-Varela</u>, 497 F.3d at 1132).

Sandoval-Enrique claims that the district court improperly participated in the parties' plea negotiations in his case during the second sentencing proceeding when the court responded to defense counsel's inquiry into why the court had rejected the parties' two plea agreements.  As previously set forth in full, the district court explained:

> I don't think giving him something in the eight month range or ten month range that's been presented twice to the Court promotes respect for the law or provides a just punishment, affords adequate deterrence, either at a specific or general level.  I can't use supervised release.  I'm comfortable with a guideline sentence.  I'm not inclined to go outside of the guideline.  But I do think he probably needs to be sentenced at the high end of the guideline range without any sort of Rule 11(c)(1)(C) agreement.

(III R. 93-94.)

Because Sandoval-Enrique did not object to the district court's response when it occurred, this court reviews for plain error.  <u>See</u> <u>Cano-Varela</u>, 497 F.3d at 1131; <u>see also</u> <u>United States v. Davila</u>, 133 S. Ct. 2139, 2146-47 (2013).  To obtain relief, then, Sandoval-Enrique "must show (1) error that (2) is plain which (3) affected his 'substantial rights' and (4) 'seriously affected the fairness, integrity or public

14

reputation of judicial proceedings.'" Cano-Varela, 497 F.3d at 1131 (quoting United States v. Vonn, 535 U.S. 55, 62-63 (2002)).[10]  We conclude, at the first step of plain-error review, that the district court did not err.

This is the first time this Court has addressed what constitutes a court's improper participation in plea negotiations in the context of a court rejecting a completed plea agreement that the parties have presented to the court.[11]  Unlike other

---

[10] We reject Sandoval-Enrique's arguments that plain-error review should not apply because he is raising here only a legal error, see United States v. Schulte, 741 F.3d 1141, 1149 (10th Cir. 2014) (reviewing "claim of legal error for plain error"); and that it would have been futile for him to object to the district court's improper participation in the plea negotiations because the district court had already rejected the Government's argument for a prison sentence of less than sixteen months.

[11] Several previous Tenth Circuit cases addressing potential Rule 11(c)(1) violations involved the district court improperly trying to convince a defendant to accept a plea agreement that the government was offering.  See Cano-Varela, 497 F.3d at 1124-34; United States v. Duran-Nevarez, 287 F. App'x 688, 692 (10th Cir. 2008) (unpublished); see also Davila, 133 S. Ct. at 2143-46, 2148 (addressing magistrate judge's attempts to convince defendant to accept plea agreement).  However, in our case the district court was not trying to convince Sandoval-Enrique to accept any plea agreement.  To the contrary, the court was simply stating why it found the prior plea agreements to be unacceptable.

In the Tenth Circuit case that presents facts closest to those at issue here, this Court held that it did not need to decide if the district court violated Rule 11 in explaining why the court rejected a plea agreement, because the defendant failed to show that any error affected his substantial rights.  See United States v. Love, 17 F. App'x 942, 946-47 (10th Cir. 2001) (unpublished); see also Davila, 133 S. Ct. at 2149 (holding that Rule 11(c)(1) error is not a form of "structural" error and, therefore, that "Rule 11(h), specifically designed to stop automatic vacaturs, calls for across-the-board application of the harmless-error prescription (or, absent prompt objection, the plain-error rule)" (citation omitted)).

There are Tenth Circuit cases addressing purported Rule 11 violations in other contexts.  For example, in Macias-Gonzalez, where the district court rejected a fast-track agreement but found a way to give the defendant the same sentence provided by

15

contexts in which a court might improperly participate in plea negotiations, Rule 11 requires the court affirmatively to assess the propriety of that agreement. See United States v. Kraus, 137 F.3d 447, 452 (7th Cir. 1998) ("[O]nce the parties have themselves negotiated a plea agreement and presented that agreement to the court for approval, it is not only permitted but expected that the court will take an active role in evaluating the agreement."). In particular, the court must evaluate the sentencing terms provided by a Rule 11(c)(1)(C) plea agreement, which will bind the court if it accepts the agreement. See Kraus, 137 F.3d at 453 (7th Cir.).[12] In making that assessment, the court can properly consider, for example, "the punishment allowable under the agreement, as compared to the punishment appropriate for the defendant's conduct as a whole." United States v. Crowell, 60 F.3d 199, 204 (5th Cir. 1995).

Rule 11, thus, required the district court in this case actively to assess the propriety of the parties' Rule 11(c)(1)(C) agreements and in particular the sentences provided by those agreements. Moreover, the district court was obliged to explain to

the rejected agreement, this Court concluded that there was no plain error warranting relief because any Rule 11(c)(1) violation did not affect the defendant's substantial rights. 219 F. App'x at 816-17. In United States v. Carver, this Court held that the district court did not violate Rule 11 by attempting "to resolve inconsistent positions taken by the defendant during the sentencing hearing" and to determine whether he wanted to "withdraw his already negotiated plea agreement." 160 F.3d 1266, 1269 (10th Cir. 1998). Similarly, in United States v. Crumpton, this Court held that the district court did not violate Rule 11 by asking the parties if they were going to settle or go to trial. 60 F. App'x 239, 242-43 (10th Cir. 2003) (unpublished).

[12] Krause, and several other cases cited hereafter, applied a prior but similar version of these Rule 11 provisions, set forth in Rule 11(e)(1)(C). The prior version was amended in 2002, but that "amendment did not change the law." United States v. Reasor, 418 F.3d 466, 478 n.10 (5th Cir. 2005).

16

the parties why it had exercised its discretion to reject the parties' agreements. See Kraus, 137 F.3d at 453 (7th Cir.) (recognizing this obligation, citing cases); see also Crowell, 60 F.3d at 203-04 (5th Cir.). The district court did so here, explaining that the sentences provided by the parties' Rule 11(c)(1)(C) agreements were too short in light of the historic fact that Sandoval-Enrique's prior sixteen-month sentence for the same offense had not deterred his criminal conduct. After the district court explained why it had rejected the second of the parties' Rule 11(c)(1)(C) agreements, defense counsel requested further explanation and the court obliged.[13]

The district court did not violate Rule 11(c)(1) by giving these explanations, which simply further detailed why it had rejected the two previously tendered plea agreements. That is true even though the court's explanation indicated that a sentence at the high end of the ten to sixteen month advisory guideline range "probably" would be appropriate. (III R. 93-94.) "Pragmatically speaking, by signaling what has motivated the court to reject an agreement, the court's remarks no doubt will have an effect on any future negotiations." Kraus, 137 F.3d at 453 (7th Cir.). That does not mean, however, that the court's explanation here of why the court rejected the parties' plea agreements violated Rule 11(c)(1). See Cano-Varela, 497 F.3d at 1132 (10th Cir.) (noting that "[n]ot all judicial comments relating to plea agreements violate the rule"); see also Kraus, 137 F.3d at 453 (7th Cir.).

---

[13] Because we conclude that the district court did not err, we need not address the Government's argument that Sandoval-Enrique invited any Rule 11(c)(1) error by asking the court for this additional explanation. See generally United States v. Morrison, 771 F.3d 687, 694 (10th Cir. 2014) (discussing invited-error doctrine).

17

"The rule against judicial participation in plea bargaining protects the parties against implicit or explicit pressure to settle criminal cases on terms favored by the judge. It does not establish a series of traps for imperfectly articulated oral remarks." United States v. Bierd, 217 F.3d 15, 21 (1st Cir. 2000) (quoting United States v. Frank, 36 F.3d 898, 903 (9th Cir. 1994)); see also Cano-Varela, 497 F.3d at 1133 (10th Cir.). An articulation of why the court rejected a plea agreement will not vitiate the entire plea process.

The inquiry into whether the district court improperly participated in the parties' plea negotiations depends on "the particular facts and circumstances," which "should be assessed, not in isolation, but in light of the full record." Davila, 133 S. Ct. at 2149-50. Such an inquiry does not lend itself to bright-line rules as to what is a proper explanation of the court's rejection of a plea agreement and what might cross the line and become a court's impermissible participation in the parties' plea negotiations. See generally United States v. Paul, 634 F.3d 668, 672 (2d Cir. 2011) (stating that a bright-line rule is inappropriate for deciding when a court's comments violate Rule 11(c)(1)).[14]

_____

[14] The Second Circuit, in Paul, indicated that the Tenth Circuit is one of several circuits that "have . . . espoused a 'bright-line' rule regarding remarks made by a trial court that touch on topics related to plea discussions." 634 F.3d at 672 (citing Cano-Varela, 497 F.3d at 1134 (10th Cir.), stating that the district court's "comparison of a post-trial sentence to a post-plea sentence was inherently coercive"). But in Cano-Varela this court was addressing a district court's improper attempts to persuade a defendant to accept a plea bargain the government was offering, circumstances markedly different from those at issue here. Moreover, to the extent that Cano-Varela adopted or appeared to adopt a bright-line rule by endorsing a test for "inherently coercive" conduct, 497 F.3d at 1134, this cannot be squared with the

18

That is true, first of all, as to bright-line rules that address temporally when the district court explains its rejection of a plea agreement. Although this court previously stated in dicta that, "after rejecting a proposed plea, a court may not offer guidance regarding what terms in a subsequent plea agreement it would find acceptable," Cano-Varela, 497 F.3d at 1133 (emphasis added), that statement is general. It does not, as Sandoval-Enrique claims, mean that it is outcome-determinative whether the court explains why it is rejecting a plea agreement either immediately before or immediately after formally rejecting the agreement.

Of course, the time when a court explains why it rejected a plea agreement may be relevant in a given case. For example, in the cases on which Sandoval-Enrique relies here, the district court explained why it rejected a plea agreement and then, during the days and weeks that followed, while the parties were attempting to negotiate another plea agreement, the court offered the parties further insights into what agreement the court might find more acceptable. Under those circumstances, other circuits have held that the district court impermissibly participated in the parties' ongoing plea negotiations. See United States v. Kyle, 734 F.3d 956, 959-66 (9th Cir. 2013); Crowell, 60 F.3d at 202-04 (5th Cir.). But nothing like that occurred here. The district court's challenged comments occurred during the same sentencing

Supreme Court's holding in Davila. Davila instructs that we must always review "a Rule 11 error" either under "the harmless-error rule" or "the plain-error rule," 133 S. Ct. at 2147, and that a district court's conduct must "be assessed, not in isolation, but in light of the full record," id. at 2150, "consider[ing] all that transpired in the trial court in order to assess the impact of the error on the defendant's decision to plead guilty[,]" id. at 2148.

19

hearing when the court rejected the parties' second plea agreement, after defense counsel requested additional explanation. And Sandoval-Enrique did not plead guilty to the information for another two months.

Generally applied bright-line rules are not helpful in determining when a district court's explanation for rejecting a plea agreement becomes improper participation in ongoing plea negotiations. There is little practical difference, for example, between the court explaining that it rejected a plea agreement because the agreed-upon sentence was too short and the court, instead, stating its conclusion that a longer sentence is required in a given case. Realistically, the court's rationale for rejecting a plea agreement's proposed sentence will reveal, at least to some extent, what ranges of sentences the court thinks would be more acceptable. See Kraus, 137 F.3d at 453 (7th Cir.) ("Pragmatically speaking, by signaling what has motivated the court to reject an agreement, the court's remarks no doubt will have an effect on any future negotiations.") Such explanations generally will not amount to improper participation in the plea negotiations. Certainly a court's statement to negotiating parties that the court would accept a specific sentence, untethered to any explanation of why the court is rejecting the parties' proffered plea agreement, could violate Rule 11(c)(1). But here the district court's statement that it could only accept a longer sentence (but still within the guideline range) was integral to the court's reasoning for rejecting the tendered plea agreements. The district court properly explained that the parties' agreement to a sentence of two to eight or ten months was inadequate

20

because Sandoval-Enrique's prior sixteen-month prison sentence for the same offense had not deterred his criminal conduct.

Our conclusion here that the district court's challenged statements did not amount to improper participation in the parties' plea negotiations is consistent with the purposes underlying Rule 11(c)(1).  See Paul, 634 F.3d at 672 (2d Cir.) ("Issues arising under Rule 11(c)(1) are highly fact-specific and, as a result, such situations must be analyzed in terms of the purposes of the rule, and not with illogical rigidity." (internal quotation marks omitted)).

The primary purpose of Rule 11(c)(1)'s prohibition against the district court participating in the parties' plea negotiations is to restrain the court's authority—as prospective trial judge and sentencer—from coercing a defendant into pleading guilty.  See Cano-Varela, 497 F.3d at 1133 (10th Cir.) ("Rule 11 protects the parties against implicit or explicit pressure to settle criminal cases on terms favored by the judge, and comments by the district judge must be evaluated in that light." (citation, internal quotation marks omitted)).  But there is no suggestion here either that the district court objectively acted to coerce Sandoval-Enrique into pleading guilty, or that the court's statements created the possibility that Sandoval-Enrique was pressured into pleading guilty pursuant to a plea agreement.  Here, in fact, the parties did not reach any further plea agreements after the court's challenged remarks; Sandoval-Enrique instead pled guilty without the benefit of a plea agreement, in order to obtain a reduction in offense level for accepting responsibility.  Sandoval-Enrique may have been deprived of the benefit of his fast-track agreements, but that

21

was due to the district court's reasonable position that the tendered plea agreements failed to provide an adequate sentence for his crime, not because the court coerced Sandoval-Enrique into pleading guilty. Sandoval-Enrique was not entitled "to have his guilty plea accepted by the court." Kraus, 137 F.3d at 453 (7th Cir.) (citing Santobello v. New York, 404 U.S, 257, 262 (1971)). Nor was there anything coercive about the district court, after properly rejecting the parties' plea agreements, leaving Sandoval-Enrique with the choice of pleading guilty to the charged offense or deciding to go to trial. See Cano-Varela, 497 F.3d at 1133 (10th Cir.).

Moreover, the district court's challenged comments did not implicate the other purposes of Rule 11(c)(1)'s prohibition against the district court's participation in plea negotiations—preserving the court's impartiality and avoiding even the appearance of impropriety. See Vanderwerff, 788 F.3d at 1277 n.6. The court's comments here did not make the court less of a neutral arbiter. The court simply explained why it was exercising its substantial discretion to reject the plea agreements that both sides had endorsed. Likewise, the court's explanation for its rejection of those agreements was based on the court's obligation actively to assess any Rule 11(c)(1)(C) agreement presented to the court and especially to ensure that the sentence imposed in a given case is appropriate.

For these reasons, then, we conclude that the district court did not improperly participate in plea negotiations, contrary to Rule 11(c)(1).

22

## IV. CONCLUSION

For the foregoing reasons, we DENY the Government's motion to dismiss this appeal as moot and AFFIRM Sandoval-Enrique's conviction.

16-2043, *United States v. Sandoval-Enrique*

**MURPHY**, J., dissenting in part.

The majority concludes Sandoval-Enrique's appeal is not moot because he is attacking his conviction, not his sentence. As to Sandoval-Enrique's challenge to the district court's rejection of the two Fed. R. Crim. P. 11(c)(1)(C) plea agreements, I disagree.

The majority relies on *United States v. Vanderwerff*, 788 F.3d 1266 (10th Cir. 2015) to support its conclusion that Sandoval-Enrique's appeal from the district court's refusal to accept either of the two fast-track plea agreements is not moot. In *Vanderwerff*, the district court rejected a plea agreement because it contained a waiver of the defendant's appellate rights. *Id*. at 1269. The plea bargain in *Vanderwerff* was a charge bargain and the appeal directly implicated the defendant's conviction because, although the parties eventually entered into another plea agreement, "the government was apparently unwilling, absent the appellate waiver, to offer the same bargain regarding *the charges*." *Id*. at 1272 (emphasis added); *see also id*. at 1270 ("The new deal omitted the appellate waiver and stipulated to the dismissal of Counts 2 and 3 (instead of Counts 1 and 3), leaving only Count 1, a receipt [of child pornography] count, for purposes of the guilty plea."). The same is not true here.

Unlike the charge bargain at issue in *Vanderwerff*, Sandoval-Enrique's two rejected plea agreements were Fed. R. Crim. P. 11(c)(1)(C) sentence bargains. *See id*. at 1271 (describing the difference between a charge bargain and a sentence

bargain and noting that charge bargains implicate a district court's sentencing discretion "only as an incidental consequence of the prosecution's exercise of executive discretion"). Sandoval-Enrique eventually pleaded guilty to the one and only count with which he was charged—unlawfully reentering the United States after removal. On appeal, he argues the district court (1) mistakenly believed it could not impose a term of supervised release, (2) placed too much emphasis on the sixteen-month sentence he received for a prior Texas conviction, (3) failed to adequately explain why it rejected the two plea agreements, and (4) attempted to subvert the fast-track program by refusing to accept plea agreements with fast-track sentences. Based on these alleged errors, Sandoval-Enrique argues, the district court refused to accept the two Rule 11(c)(1)(C) plea agreements, both of which applied the fast-track adjustment to calculate his advisory guidelines range.

Sandoval-Enrique does not, and has never, asserted the alleged errors had any effect on his willingness to plead guilty to the unlawful reentry charge. The majority is correct that Sandoval-Enrique is seeking to withdraw his guilty plea and have his conviction vacated. But this is not dispositive of the mootness issue because Sandoval-Enrique must be permitted to withdraw his guilty plea before he can receive the only relief he really seeks—a Rule 11(c)(1)(C) plea agreement incorporating a fast-track adjusted sentence. Thus, this issue is not really a challenge to Sandoval-Enrique's conviction; it is exclusively a challenge to the

district court's refusal to accept the sentence bargain in the Rule 11(c)(1)(C) plea agreement. Correction of the alleged errors would not implicate the *validity* of Sandoval-Enrique's conviction in any way and cannot affect his sentence because it has already been served.

Because any issues relating to the rejection of the two Rule 11(c)(1)(C) fast-track plea agreements are moot, that portion of Sandoval-Enrique's appeal should be dismissed. Accordingly, I dissent from Section II.B. of the majority opinion.